398 So.2d 1117 (1981)
STATE of Louisiana
v.
William Arthur WOLFE.
No. 80-K-2945.
Supreme Court of Louisiana.
May 18, 1981.
*1118 Thomas W. Davenport, Jr. of Davenport, Files, Kelly, Marsh & Graham, Monroe, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Martha E. Minnieweather, Lavalle B. Salomon, Asst. Dist. Attys., for plaintiff-respondent.
MARCUS, Justice.[*]
William Arthur Wolfe was charged by bill of information with possession with intent to distribute marijuana in violation of La.R.S. 40:967. Defendant filed a pretrial motion to suppress any evidence from use at the trial on the merit on the ground that it was unconstitutionally obtained. After an evidentiary hearing, the trial judge denied the motion. Upon defendant's application, we granted a writ under our supervisory jurisdiction to review the correctness of that ruling.[1]
Ouachita Parish Sheriff's Officer Jay Via testified that on May 22, 1980, he received information from a reliable confidential informer that Dena Riser had at one time lived at apartment # 21 at the Walker Apartments in Monroe. At the time, he possessed an arrest warrant for Ms. Riser, a young woman suspected of passing worthless checks, and had attempted to locate her at several apartments in and around Monroe for the past four months. At approximately 2:00 a. m., Officer Via, accompanied by Officer Mike Schoonover, approached apartment # 21 and noticed a light in the kitchen area. The officers were in uniform and were equipped with service revolvers, handcuffs, nightsticks and walkie-talkie radios. Officer Via knocked on the door and it was opened by defendant. Officer Via testified that he saw a female sitting on the sofa in the living room of the apartment. He asked defendant if Dena Riser was in the apartment, and defendant replied in the negative. He then asked defendant if he *1119 minded if they stepped inside to check the identity of the female, to which defendant gave his permission. However, Officer Via admitted on cross-examination that had defendant refused to let him into the apartment, he most probably would have entered anyway to discover the identity of the female based on his information from the informer. Officer Via approached the sofa and asked the young woman to produce some identification. She procured a driver's license that identified her as Linda Renee Wilson. Ms. Wilson was defendant's fiancee and resided with him at the apartment. As he approached the woman, Officer Via noticed a hemostat with marijuana residue on the end protruding from beneath the sofa where she was sitting. He placed both defendant and Ms. Wilson under arrest and advised them of their rights. The officers then asked permission to search the apartment. Officer Via told defendant if he refused to grant permission they would procure a warrant from a judge. After defendant and Ms. Wilson discussed the situation, they signed a consent to search form. Officer Via further testified that he advised defendant to turn over any marijuana in the apartment in order to save time and trouble and avoid disarranging the apartment as a result of a search. Ms. Wilson then retrieved twenty-four bags of suspected marijuana out of a bedroom closet and handed it over to Officer Via. Officer Schoonover's testimony generally corroborated that of Officer Via.
The testimony of defendant and his girlfriend differed from that of the officers. Defendant testified that after answering a knock at his door, Officer Via crossed the threshold of his apartment and stated that he had an arrest warrant for a Dena Riser. He informed the officers that Dena Riser did not live there. Defendant emphatically denied giving the officers permission to enter the apartment. Defendant further stated that upon entering the apartment, the officers' view of the sofa where Ms. Wilson was seated and where the hemostat was later discovered would be blocked by the door. Defendant stated that Ms. Wilson got up from the sofa and came to stand by him at the doorway. At the officers' request, she produced a driver's license to show that she was not Dena Riser. Officer Via started to look around the apartment, then took six to eight steps until he stood in front of the sofa and discovered the hemostat. Defendant stated that after Officer Via read him his rights, he was taken outside and told by the officer that "he doesn't turn people in for just one lid," and that if he had any controlled substances in the apartment to just turn them over. Defendant handed over one lid of marijuana. Defendant further testified that Officer Via, after stating that he believed there was more marijuana in the apartment, insisted that he would obtain a search warrant unless defendant consented to a search. The officer told him that unless he consented to a search, he and Ms. Wilson would be detained at police headquarters and officers would be stationed in and around the apartment until a search warrant was obtained. Moreover, defendant was told that it was better not to bother the judge to obtain a warrant at that time in the morning. After further discussion, defendant stated that he signed the form and Ms. Wilson retrieved the twenty-four bags of marijuana. Ms. Wilson's testimony generally corroborated that of defendant.
The issue in this case is whether, under the fourth amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant.
The same issue was recently addressed by the United States Supreme Court in Steagald v. United States, ___ U.S. ___, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In that case, the Supreme Court held that a "search warrant must be obtained absent exigent circumstances or consent." The Court stated in different words that "warrantless searches of a home are impermissible absent consent or exigent circumstances." In determining that an arrest warrant by itself was not adequate to safeguard the right of a third person to be free from unreasonable searches and seizures in his own home, the Court stated:

*1120 To be sure, the warrant embodied a judicial finding that there was probable cause to believe that Ricky Lyons had committed a felony, and the warrant therefore authorized the officers to seize Lyons. However, the agents sought to do more than use the warrant to arrest Lyons in a public place or in his home; instead, they relied on the warrant as legal authority to enter the home of a third person based on their belief that Ricky Lyons might be a guest there. Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judicial officer. Thus, while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home. Instead, petitioner's only protection from an illegal entry and search was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant. Payton v. New York, [445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639] supra; Johnson v. United States, [333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436] supra. We see no reason to depart from this settled course when the search of a home is for a person rather than an object.
In the instant case, the police officers had a warrant for the arrest of Dena Riser for allegedly passing worthless checks. The arrest warrant had been issued four months earlier but had not been executed. At about two in the morning on the day in question, based on a tip from a confidential informer, the officers attempted to enter defendant's apartment to execute the arrest warrant. They did not have a search warrant for defendant's apartment. Other than the tip from the informer, they had no reason to believe that Dena Riser was located there. There was no showing of how the informer had proven reliable in the past or that the information supplied by him was credible. Nor did the officers taken any steps to independently corroborate the tip that had been supplied by the informer. Under these circumstances, the officers lacked probable cause to believe that Dena Riser, the subject of the arrest warrant, would be found in defendant's apartment. Moreover, no exigent circumstances existed that would permit the officers to dispense with the requirement of a search warrant. Hence, under Steagald, the warrantless search of defendant's apartment was impermissible unless based upon defendant's consent.
The state has the burden of proving that the consent was valid, that is, that it was freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); State v. Bourgeois, 388 So.2d 359 (La.1980); State v. Johnson, 380 So.2d 32 (La.1980). It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether it was voluntary or coerced. Therefore, the validity of the consent is determined by the facts and circumstances of each case. State v. Bourgeois, supra; State v. Johnson, supra; State v. Temple, 343 So.2d 1024 (La.1977).
The testimony at the suppression hearing relative to defendant's consent to the officers' initial entry into the apartment was brief. Moreover, the trial judge did not give reasons for denying defendant's motion to suppress. Hence, we are unable to determine if his denial was based on a finding that the informer's tip furnished probable cause for the entry or that defendant consented to the officers' entry. The testimony of the officers conflicts with that of defendant and his girlfriend. The officers testified that defendant gave them permission to enter the premises to learn the identity of the female whom they observed sitting on the sofa when defendant opened the door. On the other hand, defendant *1121 denied ever giving the officers permission to enter the apartment. He testified that Officer Via crossed the threshold of his apartment immediately upon opening the door. He further stated that the door of the apartment obscured the officers' view of the sofa where Ms. Wilson was seated and where the hemostat was partially concealed. Ms. Wilson's testimony was generally to the same effect as that of defendant.
We consider that the officers' entry into the apartment was impermissible whether or not defendant consented to the entry because even if defendant consented, the consent was coerced and therefore invalid. Defendant answered a knock at his door at two in the morning to find two uniformed officers who informed him that they had an arrest warrant for someone he did not know. Each officer was equipped with a service revolver, handcuffs, a nightstick and a walkie-talkie radio. The officers were not satisfied with defendant's reply that Dena Riser did not live there and insisted upon checking the identity of his companion. In fact, Officer Via testified that if defendant had refused to let him come into the apartment, he most probably would have entered anyway to discover the identity of the female whom he observed on the sofa. We are unable to say under these facts and circumstances that defendant's consent to enter the apartment, if in fact it was given, was valid. Hence, the hemostat, which the officers subsequently seized within their plain view, must be suppressed as the fruit of an impermissible entry into the apartment.
After illegally entering the apartment, discovering the hemostat with the marijuana residue and placing defendant and his girlfriend under arrest, the officers repeatedly told them that their failure to sign the consent form would not prevent the search; rather, the officers would take them to headquarters, assign an officer to the surveillance of the apartment, awaken a "Duty Judge" in order to procure a warrant, and then search the apartment and possibly damage the belongings therein in the process. As a consequence, defendant turned over a lid of marijuana to the officers, defendant and his girlfriend signed the consent to search form, and Ms. Wilson turned over twenty-four bags of marijuana to the officers. Under the circumstances, we consider that the signing of the consent to search form and the turning over of the marijuana by defendant and his girlfriend were inextricably linked to the illegal entry and constituted an exploitation of that illegal activity. Brown v. Illinois, 422 U.S 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); State v. Zielman, 384 So.2d 359 (La.1980); State v. Mitchell, 360 So.2d 189 (La.1978). Hence, the marijuana obtained by the officers from defendant and Ms. Wilson must be suppressed.
For the foregoing reasons, we find that the trial judge erred in denying defendant's motion to suppress. We must reverse.

DECREE
The ruling of the trial judge denying defendant's motion to suppress is reversed. Defendant's motion to suppress is granted and the case is remanded to the district court for further proceedings.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The narrow holding of Steagald v. United States, ___ U.S. ___, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), is that an arrest warrantas opposed to a search warrantis not an adequate basis for the search of a home of a person not named in the warrant, absent his consent or exigent circumstances. The officers testified that the defendant voluntarily gave them permission to enter the premises to question one of its occupants. Although their testimony conflicted with that of the defendant, the trial judge apparently believed the officers and denied defendant's motion to suppress. Since the trial judge saw the witnesses and heard them testify, he is in a better position than this court to assess their credibility. I believe, therefore, that the trial judge's decision should be upheld.
NOTES
[*] Judges O. E. Price and Fred W. Jones, Jr. of the Court of Appeal, Second Circuit, and Judge G. William Swift, Jr. of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Dennis and Watson.
[1] 396 So.2d 888 (La.1981).