408 So.2d 903 (1981)
STATE of Louisiana
v.
Joseph BARRETT.
No. 81-KA-0056.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied January 25, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Michael W. Campbell, John Craft, Asst. Dist. Attys., for plaintiff-appellee.
Chris Christofferson, Dwight Doskey of Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
MARCUS, Justice.[*]
Joseph Barrett was charged in the same information in separate counts with possession *904 of phenmetrazine in violation of La. R.S. 40:967 and with possession of dextropropoxyphene in violation of La. R.S. 40:969. Defendant entered pleas of not guilty to the charges. His motion to suppress was denied by the trial judge. After a bench trial, defendant was found guilty as charged and sentenced to serve two years at hard labor on each count. The court expressly directed that the sentences be served concurrently. On appeal, defendant relies on two assignments of error for reversal of his convictions and sentences.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion to suppress evidence seized from his person at the time of his arrest in the house of a third person where entry was accomplished without a search warrant or exigent circumstances or consent. He argues that since he was adversely affected by the illegal entry, the evidence was unconstitutionally obtained and should have been suppressed.
The record reflects the following facts. At about 12:00 noon on June 18, 1980, Orleans Parish Police Officers Sanderson and Fanguy met with a confidential informant who had furnished them reliable information in the past that has led to numerous arrests and convictions. The informant reported that a parole violator named Joseph Barrett could be found at 2105 Pauger Street in New Orleans, but that he would probably be leaving that evening due to the fact that the police were very concentrated in that area. The officers then ran Barrett's name through the National Computer Information Center (NCIC) and discovered that Barrett was wanted for a federal parole violation. Upon placing a call to the Federal Parole Board, Sanderson was informed that a warrant for defendant's arrest for violation of parole from a bank robbery conviction and sentence had been issued. In a second call to the Parole Board, Sanderson verified that an arrest warrant had been signed and received instructions to pick up Barrett. Sanderson and Fanguy then contacted Officers Beaudoin and O'Neal and requested their assistance in executing the outstanding arrest warrant.
At about 3:00 p. m., the four officers knocked twice at the door of the house at 2105 Pauger Street. Although the officers did not know it at the time, this residence was leased to one Albert Condriff, an acquaintance of defendant. An unidentified black male opened the door and when asked about the presence of Joseph Barrett, replied that Barrett was in the rear of the house. Without a search warrant, the four officers entered the house. While Beaudoin and O'Neal detained Condriff and three other occupants in the front room, Sanderson and Fanguy proceeded to the rear of the house where they located defendant. He was placed under arrest for parole violation and advised of his rights. Before handcuffing defendant, Fanguy performed a pat-down search which produced from his right front pants pocket an amber bottle containing one pink preludin (phenmetrazine) tablet and four red darvocet (dextropropoxyphene) pills. At this point, defendant was advised that he was also under arrest for possession of narcotics.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonablesubject only to a few specifically established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is a search incident to a lawful arrest made of a person and the area of his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Wichers, 392 So.2d 419 (La.1981).
For constitutional purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect *905 lives when there is reason to believe the suspect is within. Payton v. United States, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). A search warrant must also be obtained, absent exigent circumstances or consent, to enter the house of a third party to search for the subject of an arrest warrant. Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); State v. Wolfe, 398 So.2d 1117 (La.1981).
However, in Steagald and Wolfe, the constitutional challenge was asserted by the third party whose house had been entered without a search warrant and not by the subject of the arrest warrant. Such is not the case here. Condriff (third party) is not claiming that his constitutional right to be secure in his house against an unreasonable search has been violated. Rather, defendant, the subject of the arrest warrant, is claiming that since he was "adversely affected" by the entry into Condriff's house in violation of Condriff's constitutional rights, he (defendant) has standing to raise its illegality. Defendant relies on La.Const. art. 1, § 5 (1974)[1] as interpreted by this court.[2]
Therefore, the narrow issue presented for our determination is whether, within the meaning and purpose of our constitutional provision, the subject of an arrest warrant in the house of a third person where entry was accomplished without a search warrant or exigent circumstances or consent, was "adversely affected" so as to require suppression of evidence seized incidental to his lawful arrest. We think not.
Had defendant been arrested in his own home, under Payton, the arrest warrant would have been adequate to safeguard his constitutional rights. Hence, if we were to agree with defendant's contention, the result would be that he would enjoy greater protection against "unreasonable searches, seizures, or invasions of privacy" in the house of a third party than in his own home. On the other hand, we recognize that but for the fact of defendant's presence in Condriff's house, he would not have been arrested and evidence seized from his person. Nonetheless, we are not prepared to say that, within the meaning and purpose of our constitutional provision, defendant was "adversely affected" by the illegal entry into Condriff's house so as to require suppression of the evidence seized from his person. We do not consider that the previously issued valid arrest warrant was affected by the illegal entry into Condriff's house. Nor did it affect the search of defendant made as an incident to that arrest within the area of his immediate control. Hence, the trial judge properly denied defendant's motion to suppress.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant urges this court to examine the record for an error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. Having done so, we find none. La.Code Crim.P. art. 920(2). Hence, Assignment of Error No. 2 is without merit.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
DIXON, C. J., dissents with reasons.
FORET, J. Ad Hoc, dissents.
*906 DIXON, Chief Justice (dissenting).
I respectfully dissent.
The police entered the house where they found defendant (the house of another) without a warrant, and without any showing of exigent circumstances. Defendant has the right under the last sentence in Article 1, Section 5 of the La.Const. of 1974 to raise the illegality of that entry:
"Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
LEMMON, Justice, concurring in the denial of application for rehearing.
While I agree with the majority decision, I believe it is not necessary to reach the question of whether the police, after verifying the existence of a valid arrest warrant, had the right to search Condriff's residence for defendant without additionally having a search warrant to do so. Even if I accept defendant's argument that the additional warrant was required and that defendant has standing to question the search, I conclude that exigent circumstances justified the warrantless search of the residence and the seizure of defendant's person.
When the officers received information from the confidential informant about defendant's temporary location, they could not then have obtained a warrant to search Condriff's residence. The officers had sufficient facts to establish that the informant was credible, but the informant did not supply them with sufficient facts for them to establish before a magistrate that the informant's information was reliable. (Perhaps the informant himself had only an unverified tip.) The officers therefore needed to verify the information, and the only readily apparent method for doing so in the little time available was to go to the residence.
When the police arrived at Condriff's residence (apparently not knowing whose house it was), they learned from the person who answered the door that defendant was "in the back". At that precise moment they had (for the first time) probable cause to obtain a search warrant. But also at that precise moment their leaving to obtain a warrant was out of the question. The exigent circumstances, arising from their determination of defendant's presence in the house, justified their failure to present the recently-obtained probable cause to a magistrate.
The trial judge was apparently satisfied that the officers appearance at Condriff's residence was a good-faith attempt to follow up an incomplete tip, rather than a bad-faith effort to "create" exigent circumstances.[1] Since that conclusion is supported by the record, I concur in affirming the denial of the motion for rehearing.
DENNIS, Justice (dissenting from denial of rehearing).
I respectfully dissent.
The majority's reluctance to give the defendant more protection in a third person's house than he would have in his own under the Fourth Amendment is understandable. The majority's failure to focus on the rights of the third person under the Louisiana Constitution, however, has caused it to render a decision plainly contrary to the words and intent of our state's highest law. Article 1, § 5 provides that any person adversely affected by a search or seizure in violation of the state constitution has standing to raise its illegality. As succinctly pointed out by the Chief Justice in his dissenting opinion, there is no doubt that the warrantless entrance and the seizure of the defendant inside the third person's house in this case violated the third person's state constitutional guarantee against unreasonable searches and seizures. In order to provide innocent third persons in such situations with a more perfect safeguard than the Fourth Amendment to be secure in their houses, the delegates specifically considered and adopted the provision giving standing *907 to raise the illegality to "[a]ny person adversely affected". See Documents of the Louisiana Constitutional Convention of 1973 Relative to the Administration of Criminal Justice, pp. 905-906, 1145-1146; Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 23 (1974); and Jenkins, The Declaration of Rights, 21 Loy.L.Rev. 9, 29 (1975). The majority opinion, in effect, creates an exception to Article 1 § 5 which was not contemplated by the delegates or the electorate.
NOTES
[*] Judges J. Burton Foret, Jimmy M. Stoker and P. J. Laborde, Jr. of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] La.Const. art. 1, § 5 (1974) provides:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court. (Emphasis added.)
[2] State v. Herbert, 351 So.2d 434 (La.1977); State v. Culotta, 343 So.2d 977 (La.1976); compare United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 435 U.S. 922, 98 S.Ct. 1438, 55 L.Ed.2d 515 (1978).
[1] The trial judge's conclusion is bolstered by the fact that this incident occurred prior to the Steagald decision, at a time when the officers were justified in believing that the arrest warrant gave them the right to seize defendant's person any place he could be found.