FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #026

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of May, 2017**, are as follows:


**PER CURIAM(S)**:

2015-KO-1404          STATE OF LOUISIANA v. GARY D. HOWARD (Parish of Caddo)

                      Other than defendant's unsupported allegations regarding coercion
                      and shows of force, there appears to be nothing showing the court
                      of appeal erred in its determination that Ms. Stewart consented
                      to the search.  Therefore, the court below correctly affirmed the
                      conviction.
                      AFFIRMED.

                      JOHNSON, C.J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2015-KO-1404

STATE OF LOUISIANA

VERSUS

GARY D. HOWARD

ON WRIT OF CERTIORARI TO COURT OF APPEAL
SECOND CIRCUIT, PARISH OF CADDO

**PER CURIAM**

In this matter we consider whether the evidence presented at trial, when viewed in the light most favorable to the state, reasonably permits a finding that defendant possessed 18 grams of marijuana with the intent to distribute it. We find that, while the quantity of marijuana is small, its packaging in conjunction with other indicia of drug trafficking found nearby, when viewed through the due process lens of the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, sufficed to exclude the hypothesis of innocence that the marijuana was intended only for personal use.

On October 30, 2013, defendant Gary D. Howard was arrested in the home of his girlfriend Melissa Stewart pursuant to an arrest warrant for violating his probation and parole. Officers had received a tip that defendant could be found at that location, which included an allegation that he possessed a firearm and was involved in narcotics distribution. The officers knocked on the door to the residence and, when Ms. Stewart answered, asked her where he was. According to her testimony, she responded that he was in the bedroom. According to an officer's testimony, when asked if the officers could "go and get him" pursuant to the arrest warrant, she responded by mutely stepping aside so that the officers could enter.

The officers found defendant in bed. They also found 11 grams of marijuana, in four separate bags inside a larger bag tied around the waistband of his boxer shorts (which were on the floor), another bag containing 7 grams of marijuana inside the bedroom closet, and a box of sandwich bags sitting on a TV stand in the bedroom. Also inside the closet, the officers found a gun, some 1x1 jeweler bags, and an empty prescription bottle with a small baggie inside containing marijuana residue. Defendant was arrested and subsequently charged with possession with intent to distribute marijuana and with illegal possession of a weapon while in possession of a controlled dangerous substance. After his motion to suppress the evidence was denied, he proceeded to trial and a jury found him guilty as charged of possession of marijuana with intent to distribute, but not guilty on the weapon charge. The state thereafter filed a fourth-felony habitual offender bill. Defendant pleaded guilty to being a second-felony offender in exchange for a term of 18 years imprisonment without benefit of parole, probation, or suspension of sentence.

The court of appeal affirmed defendant's conviction and sentence. *State v. Howard*, 49,965 (La. App. 2 Cir. 6/24/15), 169 So.3d 777. The court of appeal found that the multiple bags containing marijuana, which an expert testified was consistent with having been packaged for distribution, as well as the quantity of similar empty bags and the absence of any smoking paraphernalia sufficed to support defendant's conviction for possession with intent to distribute marijuana. *Id.*, p. 12, 169 So.3d at 786. After reviewing the record and with the benefit of briefing and argument, we agree.

"In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . . . . [T]he appellate court must determine that the evidence,

viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La. 1984).

Factors which give rise to a reasonable inference of an intent to distribute include: "(1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute." *State v. Hearold*, 603 So.2d 731, 735 (La. 1992) (reciting factors provided in *State v. House*, 325 So.2d 222, 225 (La. 1975)). Mere possession of a controlled dangerous substance is not evidence of intent to distribute that substance unless the quantity is so large that no other inference is reasonable. *State v. Greenway*, 422 So.2d 1146, 1148 (La. 1982). However, "while the amount of drugs may be relevant in evaluating whether the defendant engaged in possession with the intent to distribute, it is not the determinative factor statutorily. Ultimately, it is the intent to distribute that must be proved regardless of the amount of drugs possessed." *State v. Ellis*, 14-1511, p. 3 (La. 10/14/15), 179 So.3d 586, 588.

This Court addressed the sufficiency of evidence required to convict a defendant of possession with intent to distribute marijuana most recently in *State v. Tong*, 609 So.2d 822 (La. 1992). In *Tong*, the defendant and his friend were stopped for a routine traffic stop when the officer noticed a strong smell of marijuana emanating from the car. After obtaining a search warrant for the defendant's car, the officer recovered two plastic bags containing marijuana, three empty plastic sandwich bags and a dietetic scale. At trial, the state's expert

3

conceded that the "reeking smell of marijuana from the car indicated that the occupants 'were users,' and that the small quantity in the bags 'could be consistent' with personal use." The expert also noted that the dietetic scale was too crude to measure the marijuana in the individual plastic bags. *Id.* at 824–825. After the jury found defendant guilty of possession of marijuana with intent to distribute, this Court reversed and entered a conviction for simple possession. *Id.* at 826.

The similarities between the present case and *Tong* begin and end with the small quantities of marijuana involved. In contrast with *Tong*, in which there was substantial evidence in favor of the hypothesis of innocence, i.e. that the marijuana was for personal use, there were no such indicia in the present case. Officers here detected no smell of burnt marijuana and no means of using the marijuana was found. While defendant proposes there *might have been* smoking paraphernalia elsewhere in the residence but not found, a jury cannot be permitted to base its verdict on speculation; otherwise, they might just as easily speculate that a substantial quantity of cash, drugs, and a scale were present elsewhere but not found, and a jury cannot speculate as to a defendant's guilt.[1]

When applied to a case involving circumstantial evidence, such as this, the *Jackson* standard requires an appellate court to determine whether viewing the

---

[1] For example, in *State v. Lubrano*, 563 So.2d 847 (La. 1990), this Court found the evidence insufficient to prove public payroll fraud because it forced the jury to speculate:

> The due process standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the jury. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). Nevertheless, "'the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) [quoting 2 C. Wright, Federal Practice & Procedure, Criminal 2d § 467 (2d ed. 1982)]. While the state's case invited the jury to speculate on defendant's guilt, we think that a rational, pro-prosecution trier of fact would necessarily entertain a reasonable doubt as to the reliability of the movie time cards. With no other independent evidence indicating that the defendant's particular time cards were in fact accurate, a rational fact-finder could not reasonably reject the possibility that the defendant worked those hours on different days or that he simply took advantage of the chaotic conditions on the movie set to claim hours that he actually spent walking his beat in the French Quarter.

*Lubrano*, 563 So.2d at 850.

evidence in the light most favorable to the prosecution, a rational trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. *State v. Morris*, 414 So.2d 320, 321–22 (La. 1983); R.S. 15:438; *see also State v. Captville*, 448 So.2d 676, 680 (La. 1984) (when fact finder reasonably rejects hypothesis of innocence offered by the defendant, that hypothesis fails and the defendant is guilty unless another hypothesis of innocence is suggested by the record that would cause rational fact finder to have a reasonable doubt as to the defendant's guilt).

Defendant offers two hypotheses of innocence. The first can quickly be dismissed. Defendant claims he divided 11 grams of marijuana into four separate bags, and then placed those inside one larger bag, which he tied around the waist band of his boxer shorts, all in an effort to decrease the chance of it being discovered in a pat-down search. However, the arresting officer testified that marijuana packaged and concealed in this form would "more than likely" be detected in a pat-down search, and the officer further opined that whether packaged as here or simply left in one bag, it would not have affected the outcome of any search.[2] In the absence of any evidence this tactic would stand any chance of rendering the marijuana less likely to be found in a pat-down, this hypothesis is not so reasonable "that no rational factfinder, if properly instructed on the principles of

---

[2]

> Mr. Andes: If those same 11 grams had been all in one bag in my client's front pocket, would you have likely discovered them during a pat-down search?"
>
> Corporal Anderson: More than likely.
>
> Mr. Andes: More than likely? Now if those same 11 grams, back to how you found them in four separate bags like that, would that have made it more difficult or easier to discover during a pat-down search?
>
> Corporal Anderson: It's still all packaged together. It would have been the same way.

Tr., p. 212.

circumstantial evidence, could have found proof of guilt beyond a reasonable doubt." *State v. Davis*, 559 So.2d 114 (La.1990) (per curiam).

Defendant's second, and more reasonable, hypothesis of innocence is that he purchased the 11 grams of marijuana for personal use just as it was found, individually packaged in four bags, roughly equal in weight, and contained within the larger bag. This hypothesis, however, fails to account for the large quantity of similar plastic bags found *in the bedroom* with him,[3] or the firearm in the closet of the bedroom in which defendant was evidently comfortable (and in a residence for which he had a key), or why the marijuana was concealed in the manner it was within the boxer shorts, or the absence of any indication of marijuana use such as smoking paraphernalia, or the testimony of a law enforcement officer who qualified as an expert and testified that the foregoing was all more consistent with distribution rather than personal use. A reasonable alternative hypothesis is not one that merely "could explain the events in an exculpatory fashion," but one that, after viewing all of the evidence in a light most favorable to the prosecution, "is sufficiently reasonable that a rational juror could not 'have found proof of guilt beyond a reasonable doubt.'" *State v. Captville*, 448 S0.2d 676, 680 (quoting *Jackson v. Virginia*). Here, defendant's hypothesis of innocence, that the drugs were for personal use, when all of the evidence is viewed in the light most favorable to the prosecution, is not so reasonable that a rational juror could not

---

[3]

> Corporal Anderson: These are the sandwich bags right here, the ones in the box, the Family Value ones.
>
> State: Those Family Value bags, were they consistent with the way the marijuana was wrapped—
>
> Corporal Anderson: Yes, ma'am.
>
> State: —same bags? They were?
>
> Corporal Anderson: Yes ma'am.

Tr., pp. 204–205.

have found proof beyond a reasonable doubt that defendant possessed the marijuana with the intent to distribute it rather than use it.

After finding the evidence sufficient, we also briefly address defendant's contention that the district court erred in denying his motion to suppress the evidence. The court of appeal found that the trial court correctly denied this motion to suppress, finding that Ms. Stewart consented to the officers' entry to her home and the bedroom in which defendant was apprehended, and in which defendant had no reasonable expectation of privacy.[4] *Howard*, 49,965, pp. 17–18, 169 So.3d at 789. We agree.

A search warrant must be obtained, absent exigent circumstances or consent, to enter the house of a third party to search for the subject of an arrest warrant. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *State v. Wolfe*, 398 So.2d 1117 (La.1981). However, in *State v. Barrett*, 408 So.2d 903 (La. 1981), this Court declined to extend the exclusionary rule to evidence obtained from a warrantless, non-consensual entry into a home of a third party when exigent circumstances did not exist because, finding under those circumstances that defendant lacked standing to challenge the legality of the search. Defendant here asks us to overrule *Barrett*.[5] However, because the court of

---

[4] It appears that the district court may have granted the motion to suppress on different grounds than those endorsed by the court of appeal. That is of no moment. This Court has found that, while "a new basis for an objection may not be urged for the first time on appeal . . . [that] rule does not, however, preclude the proponent of a ruling on a motion to suppress from offering additional reasons for sustaining the result on review that do not require going outside of the record in the trial court." *State v. Butler*, 12-2359, p. 4 (La. 5/17/13), 117 So.3d 87, 89; *see also* La.C.C.P. art. 2133(B) ("A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.").

[5] Under La. Const. art. I, § 5, any person adversely affected by a search or seizure allegedly conducted in violation of Article I, § 5, has standing to raise that illegality. Thus, there is no equivalent under Louisiana constitutional law to the federal rule that one may not raise the violation of a third person's Fourth Amendment rights. *State v. Hamilton*, 572 So.2d 269, 272 n.1 (La. App. 1 Cir. 1990), *writ denied*, 578 So.2d 929 (La. 1991). This court framed the issue in *Barrett* as follows:

appeal's determination appears correct that Ms. Stewart consented to the officers'

entry without being coerced into doing so, it is not necessary to reach the issue of

whether defendant has standing to challenge the legality of the search.

The prohibition against warrantless searches does not apply to a search that

is conducted pursuant to consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218,

219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973).[6] To be valid, consent must

---

> However, in [*Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d
> 38 (1981)] and [*State v. Wolfe*, 398 So.2d 1117 (La.1981)], the constitutional
> challenge was asserted by the third party whose house had been entered without a
> search warrant and not by the subject of the arrest warrant. Such is not the case
> here. Condriff (third party) is not claiming that his constitutional right to be secure
> in his house against an unreasonable search has been violated. Rather, defendant,
> the subject of the arrest warrant, is claiming that since he was "adversely
> affected" by the entry into Condriff's house in violation of Condriff's
> constitutional rights, he (defendant) has standing to raise its illegality. Defendant
> relies on La.Const. art. 1, § 5 (1974) as interpreted by this court.
>
> Therefore, the narrow issue presented for our determination is whether, within the
> meaning and purpose of our constitutional provision, the subject of an arrest
> warrant in the house of a third person where entry was accomplished without a
> search warrant or exigent circumstances or consent, was "adversely affected" so
> as to require suppression of evidence seized incidental to his lawful arrest. We
> think not.

*State v. Barrett*, 408 So.2d 903, 905 (La. 1981) (citations omitted). The court then reasoned as
follows:

> Had defendant been arrested in his own home, under [*Payton v. United States*,
> 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)], the arrest warrant would
> have been adequate to safeguard his constitutional rights. Hence, if we were to
> agree with defendant's contention, the result would be that he would enjoy greater
> protection against "unreasonable searches, seizures, or invasions of privacy" in
> the house of a third party than in his own home. On the other hand, we recognize
> that but for the fact of defendant's presence in Condriff's house, he would not
> have been arrested and evidence seized from his person. Nonetheless, we are not
> prepared to say that, within the meaning and purpose of our constitutional
> provision, defendant was "adversely affected" by the illegal entry into Condriff's
> house so as to require suppression of the evidence seized from his person. We do
> not consider that the previously issued valid arrest warrant was affected by the
> illegal entry into Condriff's house. Nor did it affect the search of defendant made
> as an incident to that arrest within the area of his immediate control. Hence, the
> trial judge properly denied defendant's motion to suppress.

*Barrett*, 408 So.2d at 905.

[6] *Schneckloth v. Bustamonte* is the landmark case in the area of consent search. In *Schneckloth*,
the Supreme Court set out the requirements for a "voluntary" consent. The Court applied the
"voluntariness" standard used for purposes of determining the validity of confessions under the
fourteenth amendment. *See, e.g., Blackburn v. State of Ala.*, 361 U.S. 199, 80 S.Ct. 274, 4
L.Ed.2d 242 (1960); *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037
(1961); *Chambers v. State of Florida*, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940). The
Court decided that whether consent was voluntary or the product of express or implied coercion
must be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 223–24, 93

be (1) free and voluntary, in circumstances that indicate the consent was not the product of coercion, threat, promise, pressure or duress that would negate the voluntariness; and (2) given by someone with apparent authority to grant consent, such that the police officer reasonably believes the person has the authority to grant consent to search. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

Although defendant alleges numerous coercive elements, none are borne out by the record. Instead, the record reflects that the officers asked whether defendant was present in the residence, Ms. Stewart indicated that he was in the bedroom, and she stepped back to allow them to enter.[7] Other than defendant's unsupported allegations regarding coercion and shows of force, there appears to be nothing showing the court of appeal erred in its determination that Ms. Stewart consented to the search.[8] Therefore, the court below correctly affirmed the conviction.

---

S.Ct. at 2045–46. The state need not demonstrate that the individual understood his right to refuse consent. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047. Knowledge of the right to refuse consent is but one factor in determining the "voluntariness" of consent, and no single factor is controlling.

[7] For example, Ms. Stewart testified on cross-examination as follows:

| State: | Did you ever tell the officers that they couldn't come in your home? |
|---|---|
| Ms. Stewart: | No I didn't. |
| State: | Did you ever tell the officers that they could not search your home? |
| Ms. Stewart: | No, I did not. |
| . . . | |
| State: | Did you allow them to come in and look for Gary? |
| Ms. Stewart: | Yeah. I told them he was in the bedroom. |

Tr., pp. 162, 163.

[8] Although just two intermediate state circuit courts have previously found that a gesture may be sufficient to convey valid consent to search, *State v. Howard*, 37,580, pp. 8–9 (La. App. 2 Cir. 9/24/03), 855 So.2d 881, 887; *State v. Brown*, 598 So.2d 565, 572–573 (La. App. 4 Cir.), *writ*

**AFFIRMED**

*denied*, 605 So.2d 1092 (La. 1992), the federal circuits have generally found that consent to a search may be in the form of words, gesture, or conduct. *See, e.g., United States v. Lopez-Carillo*, 536 Fed.Appx. 762, 769 (10th Cir. 2013); *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004); *United States v. Jones*, 254 F.3d 692, 695–696 (8th Cir. 2001); *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976); *Robbins v. MacKenzie*, 364 F.2d 45, 48-49 (1st Cir. 1966), *cert. denied*, 385 U.S. 913, 87 S.Ct. 215, 17 L.Ed.2d 140 (1966).

SUPREME COURT OF LOUISIANA

No. 2015-KO-1404

STATE OF LOUISIANA

VERSUS

GARY D. HOWARD

ON WRIT OF CERTIORARI TO COURT OF APPEAL
SECOND CIRCUIT, PARISH OF CADDO

**JOHNSON, C.J., dissents in part and assigns reasons.**

I find it outrageous that defendant's conviction of possession of marijuana with intent to distribute, and sentence of 18 years imprisonment without benefit of parole, probation, or suspension of sentence, resulting from the discovery of a mere 18 grams of marijuana, will be allowed to stand. Considering the rapidly relaxing social attitudes toward the use of marijuana, the increasing number of states whose voters have approved the recreational use of marijuana,[1] and changing laws (even in Louisiana)[2] providing more lenient penalties relative to marijuana possession, the result of this case is even more ridiculous. By odd "coincidence," defendant was sentenced to 18 years in prison – exactly one year per gram of marijuana – a fact suggesting defendant's sentence was arbitrary rather than the result of careful consideration of the appropriate sentencing factors. As a practical matter, in light of the inconsequential amount of marijuana found, imprisoning defendant for this extreme length of time at a cost of about $23,000 per year (costing our state over

---

[1] Twenty-six states and the District of Columbia currently have laws legalizing marijuana in some form. Recreational use of marijuana has been legalized in California, Massachusetts, Maine, Nevada, Colorado, Washington, Oregon, Alaska and Washington D.C.

[2] In 2015, the legislature amended La. R.S. 40:966 to establish significantly more lenient penalties for possession of marijuana. Specifically, 2015 La Acts 295, eff. June 29, 2015, allows more lenient sentencing "when the amount possessed is fourteen grams or more, but less than two and one-half pounds." Notably, the amount of marijuana possessed by defendant (18 grams) only slightly exceeds the first possession benchmark (14 grams), which qualifies for the most lenient sentencing under the new law, and falls far short of the two and one-half pound benchmark for penalties that are substantially higher.

$400,000 in total) provides little societal value and only serves to further burden our financially strapped state and its tax payers.[3]

Legally, the state proved nothing more than simple possession of marijuana in this case. As noted by the majority, mere possession of a controlled dangerous substance is not evidence of intent to distribute that substance unless the quantity is so large that no other inference is reasonable. *State v. Greenway*, 422 So. 2d 1146, 1148 (La. 1982). In *State v. Tong*, 609 So. 2d 822 (La. 1992), this court addressed the sufficiency of evidence required to convict a defendant of intent to distribute marijuana and summarized this court's previous determinations on the amounts of marijuana needed to reach the "intent to distribute" threshold:

> In this case, the state presented no evidence of the number of cigarettes that defendant's marijuana could supply and Seller's testimony made clear that defendant's plastic bags contained minimal amounts of packaged marijuana. Compare *State v. Duncan*, 420 So. 2d 1105 (La.1982) (8 ounces of marijuana, enough for 1000 cigarettes, in small bags established an intent to distribute); *State v. Sibley*, 310 So. 2d 100 (La.1975) (amount of marijuana for 600 cigarettes supported an inference of intent to distribute); *State v. Stewart*, 465 So. 2d 206 (La. App. 3rd Cir.1985), *writ denied*, 468 So. 2d 571 (La.1985) (1½ pounds of marijuana in small bags sufficient to establish an intent to distribute); see also *State v. Green*, 524 So. 2d 927 (La. App. 2nd Cir.1988), *writ denied*, 532 So. 2d 129 (La. 1988) (possession of 51 marijuana cigarettes not sufficient to raise an inference of intent to distribute).

*Id*. at 824.

The state's expert in this case testified that the amount of marijuana in defendant's possession could have been rolled into 18 marijuana cigarettes of one gram each or 36 cigarettes of one half gram each. This small quantity of marijuana (18 grams or just four grams over a half-ounce) is more consistent with personal use than intent to distribute.[4] A jury cannot speculate that the defendant intended to

---

[3] The average per diem cost for housing a state inmate is $55.00 - $65.00.

[4] *See*, *e.g.*, *State v. Ramoin*, 410 So. 2d 1010, 1014 (La. 1981) (proof of possession of 27 marijuana cigarettes is insufficient to establish beyond a reasonable doubt that defendant intended to distribute marijuana); *State v. House*, 325 So. 2d 222, 225 (La. 1975) (possession of 21 marijuana cigarettes and a small plastic bag containing seeds and stems was insufficient to

2

distribute the marijuana; it must base its determination on evidence. Because the quantity of marijuana is consistent with personal use, the state's case was thus dependent on the presence of other evidence suggestive of an intent by defendant to distribute the marijuana.

In my view, there was a complete lack of evidence presented by the state that the marijuana was not for personal use. Notably there was no evidence of cash or scales, or any other pertinent indicia of distribution, found at the house. Additionally, the state's expert conceded that the marijuana found could have been for personal use. The state's expert also acknowledged it was possible that the marijuana was purchased in the same form in which police found it (four separate baggies inside of a larger one). It is apparent to me that the state's overreaction in this case was colored by the fact that a firearm was found in the closet of the bedroom. The majority also appears to find this fact significant. However, defendant was acquitted of the weapons charge (illegal possession of the firearm while in possession of a controlled dangerous substance) thereby eliminating any evidentiary value of the firearm with regard to proving his intent to distribute the marijuana.

For these reasons, I respectfully dissent from the majority's finding that the evidence presented by the state was sufficient to convict defendant of possession with intent to distribute marijuana. I would vacate the conviction for possession of marijuana with intent to distribute and enter the responsive verdict of guilty of simple possession of marijuana, and remand for resentencing thereon.

---

establish intent to distribute); *State v. Taylor*, 99-1154 (La. App. 5 Cir. 2/29/00), 757 So. 2d 63, *writ denied*, 00-1021 (La. 3/30/01) (74 grams of marijuana held insufficient to establish intent to distribute); *State v. Green*, 18,547 (La. App. 2 Cir 6/10/97), 508 So. 2d 602 (1.62 ounces of marijuana was not a sufficient amount to create a presumption of intent to distribute); *State v. Green*, 524 So. 2d 927 (La. App. 2 Cir. 1988) *writ denied*, 532 So. 2d 129 (La. 1988) (possession of 51 marijuana cigarettes not sufficient to raise an inference of intent to distribute).