NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0697

SHARI MORMAN AND DIANA M. WALKER

VERSUS

JAMES M. LEBLANC, INDIVIDUALLY & AS SECRETARY, LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, STATE OF LOUISIANA; PATRICIA MURPHY, INDIVIDUALLY AND AS DISTRICT ADMINISTRATOR, BATON ROUGE PROBATION & PAROLE OFFICE, DIVISION OF PROBATION AND PAROLE, DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS; JOHN COX, PROBATION AND PAROLE OFFICER, DIVISION OF PROBATION AND PAROLE, DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS; & JOHN DOE, JANE DOE, JOE DOE & PAT DOE (TO BE NAMED UPON DISCOVERY OF THEIR IDENTITY)

Judgment Rendered: JUL 0 8 2022

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 619,481
Honorable Ronald R. Johnson, Judge Presiding[1]

* * * * * * *

C. Frank Holthaus
Carmack M. Blackmon
Baton Rouge, Louisiana

Attorneys for Plaintiffs/Appellees,
Shari Morman and Diana M. Walker

Jeff Landry
Attorney General
André Charles Castaing
Phyllis E. Glazer
Assistant Attorneys General
Baton Rouge, Louisiana

Attorneys for Defendants/Appellants,
The Department of Public Safety and
Corrections, through its Secretary
James LeBlanc; Patricia Murphy,
District Administrator, Baton Rouge,
Probation and Parole; and John Cox,
Probation and Parole Officer

_____
[1] The Honorable Janice Clark signed the judgment on appeal prior to her retirement on December 31, 2020.

Wm. David Coffey
Assistant Attorney General
New Orleans, Louisiana

\* \* \* \* \* \* \*

**BEFORE:  WHIPPLE, CJ., PENZATO, AND HESTER, JJ.**

## PENZATO, J.

Defendants appeal a trial court judgment granting plaintiffs' motion for summary judgment on liability. For the following reasons, we reverse.

### FACTS AND PROCEDURAL HISTORY

On March 30, 2011, Kevin Morman was released from prison by diminution of sentence "as if on parole." Mr. Morman's "Diminution of Sentence" certificate listed his residence-address as 11579 Millburn Dr., Baton Rouge, Louisiana ("the residence"). Plaintiff Diana M. Walker, Mr. Morman's grandmother, is the owner of the house located at 11579 Millburn Dr. At all pertinent times, she resided at the residence along with her daughter, plaintiff Shari Morman, Mr. Mormon's mother.

After his release from prison, Mr. Morman was under the supervision of Parole Officer Brian Doyle. On December 13, 2011, the Louisiana Parole Board issued a warrant for Mr. Morman's arrest for violation of his parole. On February 29, 2012, defendant John Cox, a probation and parole officer, led a team of law enforcement officers to execute the arrest warrant issued for Mr. Morman. Officer Doyle was not a member of the team executing the arrest warrant ("the arrest team").

The arrest team arrived at the residence between 4:30 and 5:00 a.m. Ms. Walker responded to a knocking at the door, and Officer Cox identified himself and informed Ms. Walker he was looking for Mr. Morman. Ms. Walker informed Officer Cox that Mr. Morman was not in the house, but was living in New Orleans. Officer Cox told Ms. Walker that he had a warrant for Mr. Morman's arrest and would need to search the residence to verify he was not there. Ms. Walker denied Officer Cox's request to enter the residence several times, then told Officer Cox that she would need to get dressed before she would allow the officers into her residence, and she began to close the door. Officer Cox used his foot to prevent Ms. Walker from closing the door, pushed the door open, grabbed Ms. Walker by

the upper portion of her arm, and pushed her to the side of the hallway. Officer Cox instructed another officer to stay with Ms. Walker while he and the remaining officers conducted a room to room search of the house using flashlights and drawn weapons. Ms. Morman was in a back bedroom; she was awakened by an officer shining a flashlight in her face while pointing a gun at her. Ms. Morman was partially dressed, and the officer forced her to dress in front of him, then directed her to the living room, where Ms. Walker was located. After searching the residence, the officers acknowledged that Mr. Morman was not in the house and left the premises.

As a result of this incident, the plaintiffs filed a petition for damages against Officer Cox, alleging that his actions on February 29, 2012 violated their constitutional and civil rights and Louisiana law. They also named as defendants the State of Louisiana, through James M. LeBlanc, Secretary of the Department of Public Safety and Corrections (the "Department"), and Patricia Murphy, District Administrator, Baton Rouge Probation and Parole, alleging that these defendants failed to properly supervise and train Officer Cox and the other agents who forced their way into the plaintiffs' house and mistreated the plaintiffs therein; failed to establish rules, regulations, and/or guidelines for entry into homes at which parolees are not residents; and caused Officer Cox and the other agents to rely on, use, and exploit the "Diminution of Sentence" form as an excuse for forcible entry into the plaintiffs' house.[2]

On June 28, 2019, the plaintiffs filed a motion for partial summary judgment on liability. The plaintiffs argued that the Department's policies, procedures, training, and instruction classes disregarded the provisions of La. C.Cr.P. art.

---

[2] The plaintiffs' petition further alleged that the defendants' acts made them responsible for damages pursuant to 42 U.S.C. § 1983. The defendants removed the action to federal court. The plaintiffs eliminated their § 1983 claims, and the matter was remanded to state court.

895(A)(13)(a)[3] and La. R.S. 15:574.4.2(A)(2)(r)(i),[4] which required the parolee's assigned parole officer be present when entry to the parolee's residence was sought without a search warrant. According to plaintiffs, without the parolee's assigned officer, such entry became an unconstitutional warrantless search in violation of the Louisiana Constitution. Plaintiffs further argued that pursuant to a duty-risk analysis under the general negligence principles of La. C.C. art. 2315, defendants were liable for damages. In support of their motion, the plaintiffs submitted the defendants' responses to discovery, along with attachments; the depositions of Officer Doyle, Officer Cox, Officer Garrett Jackson, Officer Kathy Tannehill, Ms. Walker, and Ms. Morman; and the affidavits of Ms. Morman and Ms. Walker.

The defendants opposed the motion for summary judgment, arguing that the arrest warrant for Mr. Morman carried with it the limited authority to enter the house in which he lived. The defendants also argued that the plaintiffs failed to prove all five elements of the duty-risk analysis were met.

Following a hearing on September 17, 2020, the trial court orally granted the

---

[3] At the time of this incident, La. C.Cr.P. art. 895(A)(13)(a) provided as follows:

> A. When the court places a defendant on probation, ... it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
>
> (13)(a) Agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation officer or the parole officer assigned to him, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.

[4] At the time of this incident, La. R.S. 15:574.4.2(A)(2)(r)(i) provided as follows:

> A. (2) The board [of parole] may also require, either at the time of his release on parole or at any time while he remains on parole, that [the parolee] conform to any of the following conditions of parole which are deemed appropriate to the circumstances of the particular case:
>
> (r)(i) Agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation officer or the parole officer assigned to him, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on parole is engaged in or has been engaged in criminal activity since his release on parole.

plaintiffs' motion for summary judgment. On December 23, 2020, the trial court signed a judgment in accordance with its oral ruling, granting the plaintiffs' motion for summary judgment on liability.[5]

The defendants appeal, contending that the trial court erred when it found that the search for parolee Mr. Morman at his address of record was objectively unreasonable as a matter of law.

## LAW AND DISCUSSION

The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The burden of proof is on the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Aucoin v. Larpenter*, 2021-0064 (La. App. 1 Cir. 9/20/21), 329 So. 3d 363, 368, writ denied, 2021-01505

---

[5] By order signed March 30, 2021, the December 23, 2020 judgment was certified as an appealable partial final judgment pursuant to La. C.C.P. art. 1915(B).

6

(La. 12/7/21), 328 So. 3d 420. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.* Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Durand v. Graham*, 2019-1312 (La. App. 1 Cir. 6/12/20), 306 So. 3d 437, 440.

In this case, the plaintiffs' claims are based upon negligence. Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of La. C.C. art. 2315. *Bellanger v. Webre*, 2010-0720 (La. App. 1 Cir. 5/6/11), 65 So. 3d 201, 207, writ denied, 2011-1171 (La. 9/16/11), 69 So. 3d 1149. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). *Mathieu v. Imperial Toy Corporation*, 94-0952 (La. 11/30/94), 646 So. 2d 318, 322; *Bellanger*, 65 So. 3d at 207. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Bridgefield Casualty Insurance Company v. J.E.S., Inc.*, 2009-0725 (La. App. 1 Cir. 10/23/09), 29 So. 3d 570, 573.

The scope of a police officer's duty is to choose a course of action which is reasonable under the circumstances. *Syrie v. Schilhab*, 96-1027 (La. 5/20/97), 693 So. 2d 1173, 1177. In other words, the scope of an officer's duty to act reasonably under the circumstances does not extend so far as to require that the officer always choose the "best" or even a "better" method of approach. *Id.* Therefore, we must

7

initially determine whether the plaintiffs established that Officer Cox and the state defendants acted unreasonably under the circumstances.

The plaintiffs contend that the defendants had a duty to comply with the provisions of La. C.Cr.P. art. 895(A)(13)(a) and La. R.S. 15:574.4.2(A)(2)(r)(i), and absent the presence of Officer Doyle, the conduct of the other officers in entering the residence was an unconstitutional warrantless search. According to the plaintiffs, the defendants were negligent in breaching their duty to act reasonably by not having Officer Doyle present on February 29, 2012, and by searching the residence after being denied entry and not having a lawfully issued search warrant.

The defendants do not dispute that Officer Doyle was not present on February 29, 2012, or that the arrest team did not have a search warrant when the officers entered and searched the residence Rather, the defendants argue that the parole warrant for Mr. Morman's arrest gave the officers authority "to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within," citing *State v. Barrett*, 408 So. 2d 903, 904-05 (La. 1981). The "Diminution of Sentence" certificate submitted in connection with the summary judgment listed Mr. Morman's residence-address as 11579 Millburn Dr. Mr. Morman's case review log was submitted without objection by the defendants in opposition to the motion for summary judgment. The case review log indicated the following: a parole officer personally contacted Mr. Morman at his home at 11579 Millburn Dr. on May 26, 2011; a parole officer attempted to contact Mr. Morman at 11579 Millburn Dr. on June 14, 2011, and was told by Mr. Morman's mother that he was still at work in New Orleans; further contact was attempted by a parole officer on August 7, 2011, at which time Mr. Morman's mother indicated that Mr. Morman was staying in New Orleans for the night since he was working there all week; and, on August 18, 2011, Mr. Morman was seen by a parole officer at 11579

8

Millburn Dr. In his report of the incident, Officer Cox indicated that he reviewed the case narrative completed by Officer Doyle and was aware that Mr. Morman was personally seen by his parole officer at 11579 Millburn Dr. on May 26, 2011 and August 18, 2011. According to Officer Cox, the case narratives indicated Mr. Morman was working in New Orleans, but did not indicate he had moved from his last known address. After reviewing the information provided to him as part of the arrest team, Officer Cox determined that 11579 Millburn Dr. was a viable location to find Mr. Mormon, and an attempt to arrest Mr. Morman at that address needed to be made. According to Officer Cox, he and the other officers entered the residence and searched the house "in a manner consistent with officer safety as well as past training."

The plaintiffs are correct that as a general constitutional rule, warrantless searches are per se unreasonable. *State v. Malone*, 403 So. 2d 1234, 1236 (La. 1981). However, the penalty for violating this constitutional protection against unreasonable searches and seizures is the exclusion of evidence in a criminal prosecution. *Bellanger*, 65 So. 3d at 208. In contrast, the case before us involves an examination of the defendants' liability under the general negligence principles of La. C.C. art. 2315. The plaintiffs conflate the remedy for a warrantless search in the context of a criminal prosecution with a police officer's duty under a duty-risk analysis to choose a course of action which is reasonable under the circumstances. The absence of a warrant may be actionable for the purpose of civil liability under the duty-risk analysis if all of the elements are met. See *Bellanger*, 65 So. 3d at 208.

Based upon our *de novo* review of the evidence presented, we conclude that the defendants produced factual support sufficient to establish the existence of a genuine issue of material fact as to whether the search for Mr. Morman at his address of record was objectively unreasonable as a matter of law. Thus, we must

9

reverse the trial court's grant of summary judgment on liability.

## CONCLUSION

For the above and foregoing reasons, we reverse the trial court's December 23, 2020 judgment granting summary judgment in favor of plaintiffs on liability. All costs of this appeal are assessed against plaintiffs, Shari Morman and Diana M. Walker.

**REVERSED.**