JAMES F. MCKAY III, CHIEF JUDGE
JjSTATEMENT OF CASE
On September 25, 2015, the defendant was charged with illegal possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. He was also charged with a misdemeanor, flight from an officer, in violation of La. R.S. 14:108.1.
A hearing on the defendant’s motion to suppress evidence was heard on August 3, 2016. The court denied the defendant’s motion to suppress evidence and found no probable cause as to the felon with a firearm offense.[1]
Trial commenced on September 20, 2016. The court recessed the trial after the testimony of Officer John Sananayke[2] was complete. On September 22, 2016, the defendant entered a guilty plea pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), reserving his rights to challenge the trial court’s ruling denying his motions to suppress the evidence and statements.
The trial court sentenced the defendant to ten years imprisonment at hard labor without benefit of parole, probation or suspension of sentence for the illegal possession of a fire arm by a convicted felon, and to six months in Orleans Parish hPrison for the misdemeanor. The State immediately filed a multiple bill pursuant to La. R.S. 15:529.1, alleging the defendant to be a third offender. The defendant admitted the allegations. The court then vacated the previously imposed sentence and sentenced the defendant to thirteen years and four months at hard labor, without benefit of parole, probation, or suspension of sentence. The sentence was ordered to be served concurrently with the misdemean- or. The court noted that the plea was accepted under State v. Crosby and that the defendant was preserving his right to appeal the denial of his motion to suppress evidence and statements.
STATEMENT OF FACT
Officer John Mclver testified at the motion hearing that on the afternoon of September 25, 2015, he and his partner, John Sananayke, were traveling on Willow Street in a fully marked “Explorer SUV” *1189 in an easterly direction. Officer Mclver was seated in the passenger seat. As the officers passed Milan, a one-way street, they observed a black GMC SUV stopped at the intersection, facing the wrong direction. Officer Mclver looked back to see the GMC turn against the direction they were traveling onto Willow.- Realizing that the GMC was traveling the wrong direction on a one-way street, Officer Sana-nayke performed a U-turn as the officers observed the GMC turn onto General Pershing Street, also a one way street, in the wrong direction. The officers passed General Pershing and turned onto the next street and proceeded towards Claiborne Avenue in the same direction as the GMC.
Once on Claiborne, the officers did not see the GMC and decided to turn back down General Pershing. As they passed the Popeyes at the corner of General Pershing and Claiborne, they observed the GMC in the rear of the parking lot.
laOfficer Sananayke said, “There is the vehicle right there. It’s in that parking lot.” As soon as Officer Sananayke stopped the police vehicle, both brake lights on the GMC came on, and it-backed out of the parking spot. The GMC drove onto Claiborne. Officer Sananayke backed up onto Claiborne and continued behind the GMC after it emerged' from the lot. The officers activated their lights and siren; however the GMC “began speeding up and slamming .on its brakes, speeding up and slamming on its brakes, swerving back and forth.” From behind, Officer Mclver could clearly see the driver of the GMC “messing with stuff underneath the seat or underneath the dashboard.”
The GMC continued to proceed in this manner for approximately two blocks and then abruptly pulled to the right-hand side of the road and almost came to a complete stop. The officers pulled in behind the GMC; however, the vehicle “abruptly took off’ and “burst back into the traffic.” The GMC proceeded for another block or block-and-a-half in this manner until the driver stopped and pulled over.
Officer Sananayke and Officer Mclver both approached the vehicle: Officer Sana-nayke on the driver’s side, Officer Mclver on the passenger side. Given the experience they had just had, Officer Mclver asked the occupants to show their hands and instructed them to step out. Mr. Watts (the defendant) was the driver of the vehicle. There was a front seat passenger, Mr. Brown, and two children in the back.
The men were handcuffed and Officer Mclver advised them of their Miranda rights.[3] Officer Mclver asked Mr. Watts what he was hiding when he was making I/‘those movements.” Mr. Watts stated that he was “trying to pick something up, and then the gas pedal got stuck or something and that’s why it caused him to take off like he did.”
After they were secured, Officer Sana-nayke immediately moved to where they saw Mr. Watts leaning and retrieved a black hand gun.
After the gun was found, Mr. Watts stated that “he found it in New Orleans East in a field or by a gas station, that he just found it,”
Mr. Watts was arrested for the flight and also for possession'of a firearm by a convicted felon. He was operating the vehicle under a suspended license. Both subjects were wanted by. multiple jurisdictions.
At the trial, Officer Sananyake testified that after the GMC pulled over, their “alert level was high.” They “stayed at the vehicle advising them to put their hands *1190 out of the window for our safety” and approached the vehicle cautiously. After the defendant had been secured and responded to the officers’ questions regarding his actions, Officer Sananayake went to the driver’s compartment to investigate.
Officer Sananauake stated that the first place he looked was in the center console. He popped the top, took out the top shelf and rifled around in the center console. After that, he went to the side of the seat and then moved to the area where he had seen the defendant reaching down. He could see that the area where the carpet met the floorboard “looked manipulated,” so he looked in that area and discovered the black handgun.
Officer Sananayake explained that he looked in the console first because that was the immediate area where the driver was reaching, so he “just started from the top.”
^ERRORS PATENT
A review of the record for errors patent reveals that the trial court failed to impose a mandatory fine for the defendant’s conviction of possession of a firearm by a convicted felon. In addition to imprisonment, La. R.S. 14:95.1 mandates the imposition a fine of not less than one thousand dollars nor more than five thousand dollars. Accordingly, we remand this case for the imposition of the mandatory fine. See State v. Stephens, 2009-0631, p. 10 (La. App. 4 Cir. 11/24/09), 27 So.3d 987, 993.
ASSIGNMENT OF ERROR
Initially, the defendant argues that the stop of the vehicle was illegal as “there were no articulable facts to prove the GMC had committed the earlier traffic violations,” and, secondly, that the subsequent search of the vehicle without a warrant was not constitutionally valid as the State failed to establish the presence of a valid exception to the warrant requirement.
The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence. La. C.Cr.P. art. 703(D). The trial court is vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion, State v. Oliver, 99-1585, p. 4 (La. App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The district court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Bridges, 2011-1666, p. 4 (La. App. 4 Cir. 11/28/12), 104 So.3d 657, 660.
InThe Fourth Amendment of the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution protect a person’s reasonable expectation of privacy even while that person is within his automobile. Both the federal and state constitutions prohibit unreasonable searches and seizures, and a warrantless search and seizure is presumed to be unreasonable. Both the federal and state constitutions prohibit unreasonable searches and seizures; a warrantless search and seizure is presumed to be unreasonable. State v. Lockett, 2012-1561 (La. App. 4 Cir. 7/24/13), 120 So.3d 886 (2013) citing State v. Bridges, 2011-1666, p. 5 (La. App. 4 Cir. 11/28/12), 104 So.3d 657. In order to justify a warrantless search, the State must show that the search falls within one of the narrowly drawn exceptions to the warrant requirement. State v. Barrett, 408 So.2d 903, 904 (La. 1981).
As a general matter, “the decision to stop an automobile is reasonable *1191 where the police have probable cause to believe that a traffic violation has occurred.” Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (citations omitted). Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer are sufficient to justify a man of ordinary caution to believe that the person to be arrested has committed or was committing a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); La. C.Cr.P. art. 213; State v. Raheem, 464 So.2d 293 (La. 1985).
I. The Stop:
The defendant argues that Officer Mclver and Officer Sananayke lacked reasonable grounds to believe that the GMC was the same black SUV they had seen committing traffic violations earlier. The defendant suggests that it was just as reasonable to believe that “Watts, his brother and their sons” just happened to be leaving Popeyes at the same time that the officers were searching for the SUV.
|7The defendant notes that despite the fact that the officers claimed that the vehicle passed right in front of them, they failed to note that there were four occupants in the vehicle including two children. The defendant suggests that there are thousands of black SUVs in New Orleans, and the officers failed to observe any distinctive markings or note the license plate number of the vehicle, which would allow them to rationally believe that the GMC was the same vehicle they observed earlier. Accordingly, the defendant argues that losing the SUV when the officers had no other descriptive information about it or its occupants did not justify them in “seizing” the first black SUV they found in the general area. The defendant argues it was just as reasonable to believe that the occupants of the GMC just happened to be leaving the Popeyes at the same time that the officers were searching for the black SUV.
The defendant’s argument would perhaps be more persuasive had Officer Mclver and Officer Sananayke lost contact with the black SUV for a longer period than just the one city block between Willow and Claiborne. Furthermore, Officer Sana-nayke testified that he and his partner lost sight of the vehicle for a “short time” or only “for a few seconds.” The exceedingly short distance the officers traveled coupled with the very small amount of time that passed between sightings effectively reduced the possibility that the officers encountered a different black GMC (SUV) to a very small likelihood.
Likewise, when Officer Mclver was asked how they were able to determine the GMC was the same vehicle they viewed previously, he stated, “[i]t appeared to be the exact same make and model”—“[i]t looked exactly the same.” Furthermore, when the officers spotted the GMC. and stopped, “the brake lights of the black GMC immediately came on and [the vehicle] began to back out.” These ^^considerations, coupled with the fact that the GMC was located precisely where it should have been given its course and direction, reflect that it was certainly reasonable for the officers to believe that the GMC was the same vehicle they had only moments before observed committing the two traffic violations.
The Search:
The defendant argues that regardless of whether there was a reasonable basis to stop the vehicle, the police nevertheless lacked any justifiable basis to search the vehicle. The defendant argues that the automobile exception is inapplicable because the police lacked probable cause to believe the vehicle contained evidence or contraband and that this particu *1192 lar situation did not pose a substantial threat to officer safety sufficient to justify a protective sweep of the vehicle.[4]
In Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the United States Supreme Court recognized a limited protective warrantless search of the passenger compartment of a vehicle during a Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), stop may be justified if the officer has “specific and articulable facts which, taken together with the rational inferences |nfrom those facts, reasonably warrant [his belief] that the suspect is dangerous and the suspect may gain immediate control of weapons.” Long, 463 U.S. at 1049-50, 103 S.Ct. at 3481,[5] Under these circumstances, the officer may conduct a search of the passenger compartment of the automobile, limited to those areas in which a weapon may be placed or hidden. Id., 463 U.S. at 1049-50, 103 S.Ct. at 3481.
In Arizona v. Gant, 556 U.S, 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), Justice Scalia noted in his concurrence that “[i]n the no-arrest case, the possibility of access to .weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed.” Gant, 556 U.S. at 352, 129 S.Ct. at 1724 (Scalia, J., concurring).
Courts in this State have consistently authorized a limited protective warrantless search of the passenger compartment of a vehicle under similar circumstances- to those present here. In State v. Lockett, this Court noted that "[t]he jurisprudence has recognized that if an officer has at least a reasonable suspicion to stop a -vehicle and an occupant of the vehicle makes furtive movements during the stop, as if attempting to conceal an object, the officer has the right to conduct a limited protective sweep of the vehicle.” Id. p. 12-13, 120 So.3d at 893-94 (collecting cases).
In State v. Carver, 531 So.2d 551, 553 (La. App. 5th Cir.1988) (per curiam), the police observed the defendant in a high crime area within a parked car “hunched over in the seat ,.. working on something .,. looking up and looking around.” Carver, 531 So.2d at 552. As the officers approached, the defendant bent | mover and appeared to put something under the seat. The Court ruled that the defendant’s “fur-, five gesture when observing the officer heightened the officer’s suspicion, and according to the jurisprudence supported a reasonable belief that the situation could *1193 be dangerous justifying the subsequent search for a possible weapon.” Carver, 531 So.2d at 553.
In State v. Archie, 477 So.2d 864, 865-66 (La. App. 4th Cir.1985), this Court upheld the search of the defendant’s vehicle, noting that police “were not obliged to let [the defendant] reenter the car without checking to see what he had placed under the seat considering the real possibility that they might be in danger.” The police had stopped the defendant’s vehicle in a high crime area after observing that his license plate was bent in such a way as to make its numbers unreadable. When the officers requested that the defendant exit the vehicle, he “made a sudden erratic movement, ducking down and appearing to be concealing something under the seat.” Id., 477 So.2d at 865. This Court concluded that the defendant’s “exaggerated motion as if to place something under the seat could easily lead a reasonably prudent man to believe that his safety or the .safety of others was in danger and justified the search.” Id.
In State v. Davis, 612 So.2d 256, 258 (La. App. 4th Cir.1992), officers observed the driver of a speeding car gesture as if he was putting something under the seat, and this Court upheld the subsequent search of the area beneath the seat. The testifying officer stated that, in his experience, he had seen many suspects hide guns or drugs under the seat when being stopped. Because of this knowledge, he decided to look under the seat after the defendant had exited his car. Citing State v. Archie and Michigan v. Long, this Court found that the search was permissible.
In State v. Wilder, 2007-960 (La. App. 5 Cir. 3/25/08), 983 So.2d 124, the defendant was stopped for a traffic violation in a high crime area and was then observed concealing something in the center console. After the defendant was removed from the vehicle, the officer searched the compartment, explaining that in his experience it was a common compartment for secreted weapons. The court found that the officer’s protective search was reasonable under Michigan v. Long.
In this case, Officer Mclver testified that as soon as they put their lights and sirens on, the defendant was “swerving, slamming on the brakes, speeding back up, all the while leaning forward and making movements towards the front of the bottom of the seat.” Based on his training and experience, Officer Mclver believed that the defendant was “either arming himself or trying to hide contraband or some type of weapon.
Similarly, Officer Sananayke testified that he could see the “driver of the vehicle leaning forward and messing with something either on the floorboard or near the dash.” He noted that the driver’s act of leaning forward coincided with the erratic-swerving that was occurring. Officer Sana-nayke explained that after the GMC came to a stop, they stayed in their vehicle and ordered the occupants to put their hands out the window because it was obvious that the driver had been “either hiding some type of weapon or some type of contraband.”
It is clear that given the erratic and evasive maneuvers being executed by the driver, coupled with the officers’ observations of the driver reaching down and forward while operating the vehicle that Officer Sananayke and Officer Mclver’s belief that the driver may have been attempting to conceal a weapon was reasonable. Therefore, the limited search performed by Officer Sananayke of the area in the vehicle where the defendant was observed reaching was justified under |lgthe exception for limited protective automobile searches annunciated in Michigan v. Long. *1194 The defendant’s assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed; and we remand this matter for further proceedings, as addressed above.
AFFIRMED IN PART; REMANDED IN PART

. The court did find that there was probable cause "for the lesser charge.”

. In various portions of the appellate record, the officer’s name is spelled Senanyake.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

. In State v. Anderson, 2006-1031 (La. App. 4 Cir. 1/17/07), 949 So.2d 544, this Court discussed the automobile exception as follows:
Although a warrant is generally required prior to conducting a search, California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the "automobile exception” to this requirement is well-established. Carroll v. United States, 267 U.S. 132, 45 S.Ct, 280, 69 L.Ed. 543 (1925). Pursuant to the "automobile exception”, there is no separate exigency requirement if there is probable cause to search a vehicle. U.S. v. Ross, 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L,Ed.2d 572 (1982); see Pennsylvania v. Labran, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (“If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment .. permits police to search the vehicle without more."); see also State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330 (if a vehicle is readily mobile, there is no difference between seizing the car while obtaining a search warrant and immediately searching the vehicle without a warrant). Thus, if there is probable cause to search and the vehicle is, readily mobile, even if stationary at the time the search proceeded, any evidence will be considered constitutionally seized.
Id., 2006-1031, p, 5, 949 S6.2d at 548.

. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)