**STATE OF LOUISIANA**  *  NO. 2019-KA-0521

**VERSUS**  *

  **COURT OF APPEAL**

**KEVIN DUPART**  *

  **FOURTH CIRCUIT**

 *

  **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 543-895, SECTION "D"
Honorable Paul A Bonin, Judge
\* \* \* \* \* \*
**Judge Daniel L. Dysart**
\* \* \* \* \* \*
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart,
Judge Joy Cossich Lobrano)

Leon Cannizzaro
DISTRICT ATTORNEY
Donna Andrieu
ASSISTANT DISTRICT ATTORNEY
Irena Zajickova
ASSISTANT DISTRICT ATTORNEY
PARISH OF ORLEANS
619 S. White Street
New Orleans, LA 70119
    COUNSEL FOR APPELLEE/STATE OF LOUISIANA

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158
    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**OCTOBER 16, 2019**

This is an appeal of the trial court's denial of defendant, Kevin Dupart's Motion to Suppress the Evidence. On February 22, 2019, Mr. Dupart entered a *Crosby* plea of guilty[1] to several charges, while reserving his right to appeal the trial court's decision denying this motion.

After our review of the record and applicable law, we find that the trial court properly denied Mr. Dupart's motion to suppress. Accordingly, and for the reasons that follow, we affirm Mr. Dupart's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

By bill of information dated December 19, 2018, Mr. Dupart was charged with several offenses: (1) possession of a firearm or weapon by a felon, a violation of La. R.S. 14:95.1; (2) possession of marijuana in an amount less than fourteen grams, a violation of La. R.S. 40:966(C)(2A); (3) possession of a firearm with an obliterated serial number, a violation of La. R.S. 14:95.7; and (4) illegal possession

---

[1] "*State v. Crosby*, 338 So.2d 584 (La.1976), allows a defendant to enter a guilty plea, but reserve his or her right to appeal the denial of a motion to suppress the evidence." *State v. Hall*, 14-0738 p. 1 n.3 (La. App. 4 Cir. 2/18/15), 160 So.3d 1060, 1062, *writ denied*, 15-0606 (La. 2/5/16), 186 So.3d 1162.

of a stolen firearm, a violation of La. R.S. 14:69.1. In addition, the State charged Mr. Dupart as a multiple offender, a violation of La. R.S. 15:529.1. The multiple offender charge stemmed from a February 22, 2019 guilty plea to a charge of illegal possession of a stolen firearm and a June 26, 2017 guilty plea to a charge of possession of a controlled dangerous substance (methamphetamine).

Mr. Dupart entered a plea of not guilty to the charges on January 14, 2019, and filed several motions, including a motion to suppress statements and evidence. A hearing took place on February 22, 2019, at which time the trial court found probable cause and denied the motion to suppress. Mr. Dupart then withdrew his prior plea and entered a plea of guilty to all counts, reserving his right to appeal the ruling on the motion to suppress under *Crosby*.

Mr. Dupart waived sentencing delays and was sentenced as follows: as to count one, Mr. Dupart was sentenced to five years in the custody of the Department of Corrections without the benefit of probation, parole, or suspension of sentence, with credit for time served; as to count two, Mr. Dupart was sentenced to fifteen days in the custody of the sheriff with credit for time served; as to count three, Mr. Dupart was sentenced to serve one year in the custody of the Department of Corrections with credit for time served; and as to count four, possession of a stolen firearm, Mr. Dupart was sentenced to serve one year in the custody of the Department of Corrections with credit for time served. The trial court ordered all sentences run to concurrently; all fines and court costs were waived.

2

The State then filed a multiple bill of information in accordance with La. R.S. 15:529.1, charging Mr. Dupart as a second offender with respect to the counts three and four, to which Mr. Dupart entered a guilty plea. With respect counts three and four, the trial court vacated the previous sentences and sentenced Mr. Dupart to serve twenty months in the custody of the Department of Corrections on each charge, with credit given for time served and with all sentences to run concurrently.

This appeal followed.

### Errors Patent

We have reviewed the record for errors patent and found none. *See State v. Lambert*, 15-0886, p. 5 n.6 (La. App. 4 Cir. 1/20/16), 186 So.3d 728, 733, *writ denied*, 16-0335 (La. 2/17/17), *cert. denied*, 138 S. Ct. 92, 199 L. Ed. 2d 187 (2017).

### ASSIGNMENT OF ERROR

In Mr. Dupart's sole assignment of error, he contends that the trial court erred in denying his motion to suppress.[2] In this regard, he argues that the police officers who arrested him "lacked reasonable suspicion to approach" him, that the conditions were "tantamount to an arrest" and therefore, the officers had "no reasonable grounds for the search" of him or his bag "without a warrant." As such,

---

[2] Mr. Dupart raises four issues in the appeal, but all of these issues are included in his sole assignment of error and will be addressed herein.

he argues, without the requisite probable cause, "[t]he investigatory stop . . . tainted the fruits of the search and the taking of the alleged statement."

### *Standard of Review*

At the outset, we note our well-settled jurisprudence that an appellate court is to review the district court's findings of fact on a motion to suppress under a clearly erroneous standard, while the review of the district court's ultimate determination of Fourth Amendment reasonableness is *de novo*. *State v. Everett*, 13-0322, p. 4 (La. App. 4 Cir. 3/26/14), 709 (citing *State v. Dorsey*, 00-2331, p. 1 (La. App. 4 Cir. 1/24/01), 779 So.2d 1008, 1009, *U.S. v. Seals*, 987 F.2d 1102 (5th Cir.1993), *cert. denied*, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993)). "On mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts *de novo*." *Id.*, pp. 4- 5, 156 So.3d at 709 (citing *Dorsey*, 00-2331, p. 1, 779 So.2d at 1009). Furthermore, a trial court's decision as to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. *Id.* (citing *State v. Wells*, 08-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581). When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not disturb those findings unless there is no evidence to support them. *Id.* (citing *State v. Thompson*, 11-0915, pp. 13-14 (La. 5/8/12), 93 So.3d 553, 563).

### *Search and Seizure Principles, Generally*

The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution of 1974 prohibit unreasonable searches and seizures. *See*, *e.g.*, *State v. Watts*, 17-0208, p. 6 (La. App. 4 Cir. 6/28/17), 223 So.3d 1187, 1190. A search without a warrant is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *State v. Warren*, 05-2248, p. 13 (La. 2/22/07), 949 So.2d 1215, 1226; *Watts*, 17-0208, p. 6, 223 So.3d at 1190; *State v. Kirk*, 00-0190, p. 2 (La. App. 4 Cir. 11/13/02), 833 So.2d 418, 420. "The State bears the burden of proving that one of these exceptions applies." *State v. Cooper*, 16-1093, p. 9 (La. App. 4 Cir. 7/5/17), 223 So.3d 573, 580, *writ denied*, 17-1205 (La. 5/11/18), 241 So. 3d 1017, *writ denied*, 17-1351 (La. 5/11/18), 241 So.3d 313 (citing C*oolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Tatum*, 466 So.2d 29 (La. 1985)).

Louisiana law clearly allows a police officer to conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity. As La. C.Cr.P. art. 215.1A expressly provides, "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." This statute is a codification of the United States Supreme Court decision of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which authorized a stop based on reasonable suspicion. *State v. Miguel*, 16-1242, p. 4 (La. App. 4 Cir. 2/1/17), 211 So.3d 426, 428, *writ denied*, 17-0400 (La. 4/13/17), 218 So.3d 630.

As we explained in *State v. Everett*, 13-0322, p. 6 (La. App. 4 Cir. 3/26/14), 156 So.3d 705, 710:

> In making a brief investigatory stop on less than probable cause to arrest, the police "'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *State v. Temple*, 02-1895, pp. 4-5 (La.9/9/03), 854 So.2d 856, 859-860. (internal citations omitted). The police must therefore "articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *Id.*, 02-1895, p. 4, 854 So.2d at 860, quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "'some minimal level of objective justification. . . .'" *Id.* (internal citations omitted).

As this Court has further recognized:

> Reasonable suspicion for an investigatory stop "is something less than probable cause for arrest." *State v. Fogan*, 609 So.2d 1016, 1018 (La. App. 4th Cir.1992). *See also [Minnesota v.] Dickerson*, 508 U.S. [366] at 373, 113 S.Ct. 2130 [124 L.Ed.2d 334 (1993) ]; *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). This review is "an objective inquiry into the totality of the circumstances surrounding the encounter," *State v. Dumas*, 00-0862, p. 2 (La. 5/4/01), 786 So.2d 80, 81 (citing *State v. Kalie*, 96-2650, p. 3 (La. 9/19/97), 699 So.2d 879, 881), and calls for consideration of whether "the facts available to the officer at the moment of the seizure ... warrant *a man of reasonable cause* in the belief that the action taken was appropriate." *Terry*, 392 U.S. at 21-22, 88 S.Ct. 1868 (internal quotations and punctuation omitted)(emphasis added).

*State v. Carter*, 13-1452, p. 8 (La. App. 4 Cir. 12/19/13), 131 So.3d 479, 488, *writ denied*, 14-0013 (La. 1/21/14), 130 So.3d 952.

The Louisiana Supreme Court has further indicated:

> In determining whether the police possessed the requisite " 'minimal level of objective justification' " for an investigatory stop based on reasonable suspicion of criminal activity, *United States v. Sokolow*, 490 U.S. 1, 7,

109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts "must look at the 'totality of the circumstances' of each case," a process which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, ——, 122 S.Ct. 744, 750–51, 151 L.Ed.2d 740 (2002)(quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The assessment by a reviewing court of the cumulative information known to the officers avoids a "divide-and-conquer analysis" by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear "readily susceptible to an innocent explanation." *Arvizu*, 534 U.S. at ——, 122 S.Ct. at 751.

*State v. Johnson*, 01-2081 (La. 4/26/02), 815 So.2d 809, 811.

Once lawful investigatory stop has been made, a frisk of the person stopped

must be justified as follows:

Once a valid stop is made "and [the stopping officer] reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person." La.C.Cr.P. art. 215.1(B). To frisk a detainee, there must be some basis for a fear of safety or a fear the suspect is armed. *State v. James*, 07-1104, p. 6 (La. App. 4 Cir. 3/5/08), 980 So.2d 750, 754. "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." *Id.*, quoting *State v. Smith*, 94-1502, p. 5 (La. App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082.

*State v. Candebat*, 13-0780, p. 8 (La. App. 4 Cir. 1/30/14), 133 So.3d 304, 308

(quoting *State v. Marzett*, 09-1080, p. 6 (La. App. 4 Cir. 6/9/10), 40 So.3d 1204,

1208). *See also*, La. C.Cr.P. art. 215.1 B.[3]

---

[3] La. C.Cr.P. art. 215.1 B provides that "[w]hen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk

The relevant question is not whether the officer subjectively believed he was in danger or articulates that subjective belief in his testimony, but whether a reasonably prudent person in the circumstances would be warranted in his belief that he or others were in danger. *State v. Boyer*, 07-0476, p. 22 (La. 10/16/07), 967 So.2d 458, 472 (citing *Dumas*, 00-862, pp. 2-3, 786 So.2d at 81-82 and *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883); *United States v. Tharpe*, 536 F.2d 1098, 1101 (5th Cir. 1976) ("We know of no legal requirement that a policeman must feel 'scared' by the threat of danger. Evidence that the officer was aware of sufficient specific facts as would suggest he was in danger satisfies the constitutional requirement").

With these principles in mind, we have reviewed the record and find that the trial court correctly denied Mr. Dupart's motion to suppress.

**DISCUSSION**

Because Mr. Dupart pled guilty, there was no trial; we thus rely on the facts as presented at the hearing on the motion to suppress. At that hearing, the State called two witnesses: New Orleans Police Department Officers Colin Niselman and Rayvon Souffrant. Officer Niselman is a task force officer in the 8th District of New Orleans which he described as being involved in "specific problems, be it narcotics, firearms, illegal traffic" in the French Quarter. He has been a member of this task force for three years and, in the last year, along with his partner, Officer Souffrant, was responsible for fifty-five illegal firearm arrests.

On Halloween night, October 31, 2018, Officer Niselman was in plainclothes doing proactive patrol on foot in the 8th District on Bourbon Street when he observed Mr. Dupart walking on Bourbon Street towards St. Ann Street

the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person."

8

carrying a large shoulder sling bag, approximately twelve inches by six inches, and an inch thick. He noted that the bag "had a large bulge in it and it appeared heavy." Officer Niselman described observing Mr. Dupart as follows: "He passed two uniform New Orleans EMS personnel. As he observed [them], he grabbed at his bag, looked at them, did a double take at them, started tapping at his bag, as he quickly walked away from the EMS personnel." He again noted that the "bag had a large bulge in it" and while it had been "swinging quite freely as he walked," after seeing the EMS personnel, "he grabbed the bag."

When questioned as to whether Mr. Dupart's demeanor changed when he saw the two uniformed EMS personnel, Officer Niselman indicated that, "[a]s soon as [Mr. Dupart] noticed two uniformed EMS personnel, he did a double take[,] . . . . His eyes grew wide and surprised and he clutched his bag."

In the body camera videotape played during the hearing, it is evident that the officers were carefully watching Mr. Dupart as he approached the EMS personnel. Although there is much background noise, one of the officers remarked, "I want to see what he does when he passes EMS." Thus, the officers were keenly focused on Mr. Dupart's behavior when he noticed the EMS personnel. Notably, according to Officer Niselman, at that time, the EMS personnel were merely standing by their unit and were not tending to any patients.

Officer Niselman testified that, based on what he observed, he and Officer Souffrant elected to perform a pedestrian stop to investigate the possibility that Mr. Dupart was concealing a weapon. The decision to do so was based on his "training with the ATF concealed weapon carry classes and . . . RTCC guns, drugs, and gang classes" as well as his "previous arrests for concealed firearms given similar circumstances." At that point, Officer Souffrant conducted an open-palm pat-

9

down of Mr. Dupart's bag and immediately alerted Officer Niselman to the presence of a firearm. After Officer Souffrant detected the firearm, they placed handcuffs on Mr. Dupart. Officer Niselman then removed the firearm, a full-sized Glock 17, along with an extended 33-round magazine containing 34 live rounds of 9 millimeter ammunition, from Mr. Dupart's bag.

At this point, Officer Souffrant gave Mr. Dupart *Miranda* warnings,[4] and Mr. Dupart verbally acknowledged his *Miranda* rights. Upon questioning, Mr. Dupart admitted that he did not have a concealed carry permit and he was then arrested for illegal possession of a firearm. Mr. Dupart was relocated to the 8th District Police Station, where Officer Niselman noted that the serial number underneath the barrel of the firearm was "completely obliterated" and the serial number etched on the slide of the firearm was scratched, but still legible. Officer Niselman learned from NCIC[5] that the firearm was stolen and had a "previous NOPD item number."

At the station, a search incident to arrest was performed and a small plastic bag containing "vegetable matter with an odor and appearance consistent with that of marijuana" was found in Mr. Dupart's outer vest.

Officer Souffrant testified next, and further described Mr. Dupart's actions prior to his being stopped. While he was observing the "entire crowd," given that it was Halloween, his attention was directed to Mr. Dupart when Officer Niselman (or another officer, Officer Herman) stated, "[l]ook at this guy" and indicated their belief that he was carry a firearm in his bag because "they observed him reposition

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] The NCIC is "the National Crime Information Center." *Smith v. Hous. Auth. of New Orleans*, 17-0038, p. 1 (La. App. 4 Cir. 6/28/17), --- So. 3d ----, ----, 2017 WL 3426018 at * 1, *writ denied*, 17-1273 (La. 11/6/17), 229 So.3d 472.

the bag, doing that tap like that, and then having experience with noticing that behavior." He described what Officers Niselman and Herman observed:

> As [Mr. Dupart] passed uniformed officers, because we're in plainclothes that evening, he grabbed his bag, repositioned it, and conducted what we refer to oftentimes as a "security check," meaning that to ensure whatever items or contraband he has concealed in – concealed as you would think from other law enforcement officials.

Officer Souffrant trusted Officers Niselman's and Herman's statements that they believed Mr. Dupart was carrying a concealed firearm "based on their observations, . . . [having seen him] reposition the bag, doing that tap like that, and then having experience with noticing that behavior." Once Mr. Dupart was stopped, Officer Souffrant then conducted the pat-down "to be sure he wasn't in possession of a dangerous weapon."

At the conclusion of the hearing, the trial court denied the motion to suppress, finding that "the officers had -- under the totality of the circumstances, had reasonable suspicion to stop Mr. Dupart, and also reasonable suspicion to, in effect, frisk him for a weapon." Mr. Dupart contends that this ruling was erroneous, first and foremost, because the officers lacked grounds for the initial stop. He argues that he was simply "walking down a well-lit busy street doing nothing criminal or suspicious," he "did not run upon seeing EMS and he complied with the officers."

In our view of the record, and more particularly, with the totality of the circumstances, the officers had sufficient grounds upon which to conduct an investigatory stop of Mr. Dupart in compliance with La. C.Cr.P. art. 215.1A . At

11

the least, the officers, who drew on their "own experience and specialized training to make inferences from and deductions," had "some minimal level of objective justification" as contemplated by the *Johnson* Court. In *Johnson*, the Supreme Court found that police officers were justified in making an investigatory stop of the defendant when, although the officer's "testimony did not describe 'headlong' flight," the defendant "had quickened his pace to a 'near run' and that he and his companion had looked repeatedly over their shoulders in the officers' direction as they headed to the crossover leading into another courtyard." *Johnson*, 01-2081, p. 3, 815 So.2d at 811. The Court gave "due deference to [the] deduction by a trained police officer, . . . in the context of the other circumstances known to the officer" and found that the circumstances "provided the minimal objective justification for an investigatory stop." *Id*. Those other circumstances included the "lateness of the hour [and] the high crime character of the area." *Id*.

In the instant matter, giving the same due deference to Officers Niselman and Souffrant, both trained police officers, we believe the totality of the circumstances warranted the investigatory stop. This incident took place on Halloween night on Bourbon Street; short of Mardi Gras, arguably one of the biggest crowd-inciting events of the year in the French Quarter and, particularly, Bourbon Street. Mr. Dupart's furtive behavior and the manner by which he repositioned his bag upon seeing the EMS personnel certainly gave the justification to these trained officers, who, in the previous year, were responsible for

12

"approximately 55 illegal firearm arrests," to stop Mr. Dupart.[6]  Indeed, "[a]n

officer's past experience, training and common sense may be considered in

determining if the inferences drawn from the facts were reasonable." *State v.*

*James*, 07-1104, p. 4 (La. App. 4 Cir. 3/5/08), 980 So.2d 750, 753.   Additionally,

"in evaluating the totality of the circumstances, an individual's nervous, evasive

behavior is also a pertinent factor in determining whether an officer had reasonable

suspicion." *State in Interest of D.F.*, 13-0547, p. 4 (La. App. 4 Cir. 8/21/13), 122

So.3d 1193, 1196.  Here, paramount to the concern of the officers was the safety of

those in the massive crowd on Halloween night.

In *State v. Taylor*, 363 So.2d 699, 702 (La. 1978), the Louisiana Supreme

Court found an investigatory stop, and subsequent weapons pat-down, to be

justified where two officers in the French Quarter noticed two men "running

toward them" and upon seeing the officers, "abruptly ceased running and

commenced walking in the same direction." *Id*.  The Court noted that the area was

known for crime and the defendant's behavior was "consistent with that of one

who has just committed a crime."  While the officers did not observe the defendant

engaging in any criminal activity, like the instant case, it was the defendant's

suspicious conduct which warranted the investigatory stop.

In this case, we find that the officers articulated a rational basis for

conducting an investigatory stop of Mr. Dupart, the stop was legal, and we find

---

[6] Notably, while Officer Niselman was not directly asked about the area's reputation for crime, one can readily infer that crime is prevalent in his district (the 8th District) by virtue of his having made approximately 55 arrests for illegal firearms in one year, alone.

that the trial court properly denied Mr. Dupart's motion to suppress. While nervousness and looking startled, alone, may not be sufficient to authorize such a stop, "this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause." *State v. Belton*, 441 So.2d 1195, 1198 (La. 1983). Here, it was not merely Mr. Dupart's becoming startled that warranted an investigatory stop; this was coupled with his grabbing and repositioning his bag, and conducting a "security check," which, as known by these seasoned officers, is a manner by which individuals try to conceal contraband, all taking place under the extraordinary circumstances of it being Halloween night on Bourbon Street.

Having found that the officers' investigatory stop was legal, we likewise find that pat-down of Mr. Dupart's bag complied with La. C.Cr.P. art. 215.1, and our jurisprudence on this issue. The reasonableness of a frisk conducted as part of a lawful investigatory stop is governed by an objective standard. *State v. Dumas*, 00-0862, p. 2 (La. 5/4/01), 786 So.2d 80, 81. As noted herein, "'[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a frisk 'to determine whether the person is in fact carrying a weapon.'" *Carter*, 23-1452, p. 7, 131 So.3d at 487(quoting *Terry*, 392 U.S. at 24, 88 S.Ct. 1868).

In the instant matter, the officers reasonably believed Mr. Dupart was carrying a concealed weapon. Objectively and under the totality of the

circumstances, they were justified in conducting an open palmed pat-down of his bag to determine whether or not he was carrying a weapon, obviously for their own safety and that of the Halloween crowd on Bourbon Street.

We are not persuaded by Mr. Dupart's argument that the seizure of the weapon by the officers was not justified as incident to an arrest or that the "officers' conduct constituted an 'arrest,' not just an investigatory stop" for which the "officers were without probable cause." It is clear from the Officer Niselman's testimony that Mr. Dupart was handcuffed only after the pat-down revealed the presence of the weapon in his bag. When questioned at trial, Officer Niselman specifically indicated that Mr. Dupart was placed in handcuffs "[a]fter Souffrant found the firearm in the bag." It is likewise clear that the officers went into the bag after the weapon had been detected and Mr. Dupart was handcuffed.

Once the officers determined that Mr. Dupart was, indeed, carrying a weapon, they were authorized to handcuff him for officer safety. *See*, *e.g.*, *State v. Lewis*, 12-902, pp. 9-10 (La. App. 5 Cir. 6/27/13), 121 So.3d 128, 136 ("Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a *Terry* stop. . . . '[A]n officer's handcuffing a suspect is a reasonable method of ensuring officer safety.'")(internal citations omitted); *See also Welch*, 10-0422, p. 8, 59 So.3d at 447; *State in Interest of D.P.*, 17-0194, p. 5 (La. App. 4 Cir. 11/29/17), 231 So.3d 829, 833.

After the weapon was removed from the bag, Officer Souffrant provided Mr. Dupart with his rights pursuant to Miranda, and Mr. Dupart acknowledged that he understood those rights and then admitted that he did not have a permit to carry a concealed weapon.[7] There can be no question, therefore, that the officers had probable cause to arrest Mr. Dupart. *See State v. Johnson*, 94-1170 (La. App. 4 Cir. 8/23/95), 660 So.2d 942, 946 ("Once Officer Heck retrieved the weapon, he had probable cause to arrest [defendant] for carrying a concealed weapon."); *State v. Wade*, 390 So.2d 1309, 1313 (La. 1980)("[a]fter the frisk, the officers had probable cause to place the defendant under custodial arrest for carrying a concealed weapon and to seize the weapon.").

Having found that the trial court properly denied the motion to suppress, we find no merit to Mr. Dupart's assignment of error.

**CONCLUSION**

For the reasons set forth more fully herein, we find that the motion to suppress was properly denied. We therefore affirm Mr. Dupart's conviction and sentences.

**AFFIRMED**

---

[7] Mr. Dupart's statement, made after being *Mirandized*, is clearly admissible and not "tainted by the illegality of the stop" as Mr. Dupart contends.