BROWN, C.J.
Defendant, Darrius Smart, was indicted by a grand jury for the second degree murder of Kirby Johnson ("Johnson"). Defendant waived a jury trial and, after a bench trial, was convicted of the lesser responsive verdict of manslaughter. The trial court sentenced Defendant to 40 years at hard labor with credit for time served. On appeal, defense counsel urged insufficiency of the evidence, and Defendant in his pro se brief argued that his sentence is excessive. We affirm the defendant's conviction and sentence.
FACTS
On September 23, 2016, a group of young men were on the playground near the housing project located on Johnson and Jacobs Streets in Mansfield, Louisiana. Defendant, age 19, was one of the young men. In the early evening hours, in the area where the group of young men were gathered, Johnson, age 31, left his female friend Fredreka Green, age 24, to go get a cigarette from the candy lady. When Johnson made it to the mailbox, Ray Scott, age 14, one of these young men, alerted the others to Johnson's presence at the mailbox. These young men had apparently been looking for Johnson to confront *31 him about his shooting a BB gun at them the previous night. When Johnson realized that he was being pursued by the group of young men, he fled from them, heading to his apartment. Defendant raised a gun and shot at Johnson as he was fleeing. Johnson was found unresponsive, lying on a sidewalk near the intersection of Johnson and Jacobs Streets. He was airlifted to University Health in Shreveport, where he died at 3:33 a.m. from a single gunshot wound through the head as confirmed by the testimony of the forensic pathologist, James G. Traylor, Jr., M.D, who performed Johnson's autopsy. Lieutenant Billy Locke of the Mansfield Police Department, also a deputy coroner, testified that there was no blood trail, and that neither a gun nor shell casings were found.
On September 26, 2016, an arrest warrant was issued for Defendant, who turned himself in and has been incarcerated since. As noted above, Defendant was charged by indictment with second degree murder. He waived a jury trial and, after a bench trial on October 16, 2017, he was found guilty of the lesser but responsive crime of manslaughter. On December 7, 2017, Defendant was sentenced to 40 years at hard labor, which is the maximum penalty for manslaughter. No motion for reconsideration of sentence was filed. This appeal ensued.
DISCUSSION
Sufficiency of the Evidence
In this case we must determine whether the evidence presented at trial, when viewed in the light most favorable to the state, reasonably permits a finding of manslaughter. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Howard , 15-1404 (La. 05/03/17), 226 So.3d 419.
Appellate counsel contends that the state failed to prove that Defendant had a gun or that he shot Johnson and that the State's eyewitnesses gave suspicious and conflicting testimonies. Defense counsel points out that Jarius Franklin's testimony was that there was more than one shot, but all of the other witnesses testified that there was only one shot. Franklin, who was 16 years old at the time of the shooting, testified that he heard a shot, then he turned his head and saw Defendant fire the gun. Defendant also notes the discrepancy between Franklin's testimony that Defendant alone fired the gun and Fredreka Green's adamant testimony that Defendant was surrounded by other boys who were urging him to fire the gun. Appellate counsel further asserts that Franklin was coerced into testifying that he saw Defendant shoot Johnson when the investigating officer threatened to treat Franklin as a suspect instead of a witness.
In reviewing the sufficiency of the evidence to support a conviction, the appellate court is controlled by the standard established in Jackson v. Virginia, supra , which is whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Hearold , 603 So.2d 731 (La. 1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens , 30,903 (La. App. 2d Cir. 09/25/98), 719 So.2d 610, writ denied, 98-2723 (La. 02/05/99), 737 So.2d 747. This standard, now legislatively embodied in La. C.C.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 02/22/06), 922 So.2d 517.
*32 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey , 99-0023 (La. 01/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed. 2d 62 (2000) ; State v. Woodard , 47,286 (La. App. 2d Cir. 10/03/12), 107 So.3d 70, writ denied , 12-2371 (La. 04/26/13), 112 So.3d 837.
At the time of the offense, La. R.S. 14:30.1 provided, in relevant part, that "second degree murder is the killing of a human being ...[w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:31 provides, in relevant part, that "manslaughter is a homicide committed, without any intent to cause death or great bodily harm ... [w]hen the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person."
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances and the actions of the defendant. State v. Mickelson , 12-2539 (La. 09/03/14), 149 So.3d 178 ; State v. Walker , 51,217 (La. App. 2d Cir. 05/17/17), 221 So.3d 951. Specific intent can be formed in an instant. State v. Washington , 50,424 (La. App. 2d Cir. 03/16/16), 188 So.3d 350, writ denied , 16-0718 (La. 04/13/17), 218 So.3d 119.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Lloyd , 48,914 (La. App. 2d Cir. 01/14/15), 161 So.3d 879, writ denied , 15-0307 (La. 11/30/15), 184 So.3d 33, cert. denied , --- U.S. ----, 137 S. Ct. 227, 196 L.Ed. 2d 175 (2016). Specific intent to kill may also be inferred from the extent and severity of the victim's injuries and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. State v. Washington , supra .
The determination of whether the requisite intent is present is a question for the trier of fact. Id. ; State v. Walker, supra ; State v. Allen , 41,548 (La. App. 2d Cir. 11/15/06), 942 So.2d 1244, writ denied , 07-0530 (La. 12/07/07), 969 So. 2d 619.
In the case sub judice, the evidence presented at trial was more than sufficient to support both the charged offense of second degree murder with specific intent to kill and the responsive verdict of manslaughter. At trial, the State presented the testimony of six lay witnesses, four law enforcement officers, and the forensic pathologist. At least two witnesses, Franklin and Green, placed Defendant at the crime scene and identified him as the shooter.
Green testified that Defendant had a gun, and she heard Kameron Green and other boys daring Defendant to pull the trigger before Johnson could make it to his house. She saw Defendant shoot the gun at Johnson, who was running for his life before making it to the stop sign at the corner of Johnson and Jacobs Streets. Green also testified that it did not appear that Defendant really aimed the gun, and she wondered if Defendant actually fired the gun to get Johnson to stop running.
Green stated that she saw that Johnson initially kept moving forward after being shot, and that he actually made it across the street to the sidewalk in front of his house before he collapsed. All of the boys *33 ran away in separate directions. Green yelled after them and told the boys they should turn themselves in to the police. Green reported to the police that one boy's mother went to the scene to look for a shell casing, and the crime scene was expanded. Green also testified that the victim had been beaten with a metal pipe by a group of boys including Defendant, about three weeks before his death, and the night before his death, he had to threaten a group of young men with a BB gun to get them to stay away from his home.
Jarius Franklin, age 16, identified Defendant in court as "Shrimp Bait." Franklin testified that he saw Defendant earlier the afternoon of the shooting, talking with Claiborne and Scott on the playground.[1] Franklin testified that the shooting occurred just as the sun was going down, as Defendant was standing in a grassy area at the northwest corner of the intersection of Jacob and Johnson Streets. Franklin testified that he saw Defendant shoot Johnson. Under direct examination, Franklin said, "I mean I walked to the middle street. By the time I got there. I just heard, I just heard a shot. I turned around--seen him shoot and turned around and went back to the house." Under cross-examination, when asked, "You actually saw him shoot?" Franklin said, "Yes, sir." On redirect, the trial court asked, "Okay, did you see the bullet strike him?" Franklin answered, "I mean when I seen the shot, turned around and went back to the house."
The testimony of Dr. Traylor, Green, and Franklin confirm that there was some distance between Defendant and Johnson before the latter was shot and collapsed. The testimony of all witnesses and law enforcement officers involved in the investigation confirms that Johnson was shot and found at or near Johnson and Jacobs Streets. There is no internal contradiction or irreconcilable conflict with the witnesses and the physical evidence. Defendant did not present any evidence.
Absent internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Wiltcher , 41,981 (La. App. 2d Cir. 05/09/07), 956 So.2d 769 ; State v. Burd , 40,480 (La. App. 2d Cir. 01/27/06), 921 So.2d 219, writ denied , 06-1083 (La. 11/09/06), 941 So.2d 35.
The evidence was sufficient to prove both that Defendant was guilty of second degree murder with specific intent to kill, in violation of La. R.S. 14:30.1, and manslaughter, committed during the perpetration of an aggravated battery, in violation of La. R.S. 14:31(2)(a). Defendant demonstrated a specific intent to kill when he pointed the gun at Johnson and pulled the trigger. Two eyewitnesses, Green and Franklin, testified that they saw Defendant pull a handgun, point it at Johnson as he was running away, and pull the trigger. Johnson was shot in the back of the head and died. The autopsy clearly established that he died from the gunshot wound.
Defendant's intent to kill was further corroborated by testimony from Johnson's fiancée Comechalla and her mother Jacqueline that Defendant came to their home and pulled a gun on them, Johnson, and Johnson's son, and threatened to kill Johnson two days before his death. Defendant's intent to kill or inflict great bodily harm was corroborated by evidence of prior acts. Specifically on August 18, 2016, when Defendant participated in a group assault and *34 battery on Johnson, wherein Defendant and a group of young men chased Johnson down, just as they did the day Defendant shot Johnson, and then battered him in the face, head, shoulders, and arms with a metal pipe.[2]
A review of the entire record clearly shows that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have reasonably concluded that Defendant was the shooter and shot Johnson with intent to kill. The elements of second degree murder were proved beyond a reasonable doubt and a lesser verdict of manslaughter was responsive to the crime charged. State v. Cooley , 260 La. 768, 257 So.2d 400 (1972).
Excessive Sentence
Defendant's pro se assignment of error is that the 40-year hard labor sentence is excessive and disproportionate to the offense. According to Defendant, the trial court failed to adequately consider the circumstances of the case and Defendant's background. Defendant contends that the death was accidental because he fired a shot in the air on a dare to scare Johnson and that the bullet "miraculously" hit the victim in the head. He states that "[b]ibically, it is uncanny that the randomly-fired bullet was designed to take the life of Kirby Johnson." Defendant adds that "[t]his was God's will that Kirby Johnson would die this day. Mr. Smart was the vassal used to bring this act to a close. Mr. Smart had no intent to harm Kirby Johnson."
Defendant asserts that the 40-year sentence is excessive since he will have to serve at least 85 percent of the sentence before he will be eligible to be considered for parole. He urges that the 40-year sentence be reduced in order to give him the "chance to give something back to our society," because "[d]estroying two lives does not equal justice."
Whether a sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Lobato , 603 So.2d 739 (La. 1992) ; State v. Fatherlee , 46,686 (La. App. 2d Cir. 11/02/11), 77 So.3d 1047 ; State v. Livingston, 39,390 (La. App. 2d Cir. 04/06/05), 899 So.2d 733 ; State v. White , 37,815 (La. App. 2d Cir. 12/17/03), 862 So.2d 1123.
Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor , 41,898 (La. App. 2d Cir. 04/04/07), 954 So.2d 804. However, in cases where the offense does not adequately describe the conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. State v. Black, 28,100 (La. App. 2d Cir. 02/28/96), 669 So.2d 667, writ denied , 96-0836 (La. 09/20/96), 679 So.2d 430. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained and the offense involves violence upon a victim. Id.
Prior to imposing sentence, the trial court considered Defendant's personal and *35 educational history and his lack of a criminal history as mitigating circumstances. The trial court also carefully articulated the aggravating circumstances.
Johnson's three young children, fiancée, mother, and siblings all suffered emotionally and economically due to his death. Defendant's behavior could have led to a conviction for second degree murder with a life sentence with no benefits, so the imposed sentence of 40 years with benefits was a significant reduction.
Considering the totality of the circumstances, this sentence is not constitutionally excessive. A 40-year sentence for manslaughter, when the evidence presented arguably supported a finding of second degree murder, is neither grossly disproportionate to the severity of the offense nor is it shocking to one's sense of justice.
CONCLUSION
For the foregoing reasons, Defendant's conviction and sentence are affirmed.
AFFIRMED.

Jarius Franklin is sometimes mistakenly referred to as Jeremy Franklin by Green and as Jarvis Franklin by the prosecution in the record.

The use of prior acts was not assigned as error. However, under Code of Evidence 404(B), this evidence was admissible.