Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,317-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

KEITH ADAMS                                 Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 399,147

Honorable Erin Leigh Garrett, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

ROSS S. OWEN
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before PITMAN, ROBINSON, and ELLENDER, JJ.

**PITMAN, C. J.**

The jury found Defendant Keith Adams guilty as charged of three counts of possession of a firearm by a convicted felon, one count of possession with intent to distribute a Schedule I Controlled Dangerous Substance ("CDS"), three counts of illegal carrying of weapons while in possession of a CDS and one count of unlawful handling of a machine gun. The trial court sentenced him to 20 years at hard labor without benefit of probation, parole or suspension of sentence for each count of possession of a firearm by a convicted felon; to 7 years at hard labor for possession with intent to distribute a CDS; to 8 years at hard labor without benefit of probation, parole or suspension of sentence for each count of illegal carrying of weapons while in possession of a CDS; and to 8 years at hard labor for unlawful handling of a machine gun. It ordered all sentences to run concurrently with each other and gave Defendant credit for time served. It also ordered him to serve 100 days in the parish jail in lieu of a fine for the convictions of possession of a firearm by a convicted felon, to run concurrently with the other sentences. Defendant appeals his convictions. For the following reasons, we affirm his convictions and sentences.

## FACTS

On February 1, 2024, the state filed a bill of information. On June 4, 2024, it filed an amended bill of information charging Defendant with three counts of possession of a firearm by a convicted felon, one count of possession with intent to distribute a Schedule I CDS, three counts of illegal carrying of weapons while in possession of a CDS and one count of unlawful handling of a machine gun. It alleged that on or about December 7, 2023, Defendant unlawfully possessed a Glock 17 9mm handgun, a

Glock 29 10mm handgun and an Anderson Arms AM15M, after having been previously convicted on September 7, 2023, of possession with intent to distribute a Schedule I CDS; knowingly and intentionally possessed with intent to distribute less than 2.5 pounds of marijuana; used, possessed or had under his immediate control a Glock 17 9mm handgun, a Glock 29 10mm handgun and an Anderson Arms AM15M, while in possession of marijuana; and possessed a machine gun capable of automatically discharging more than eight cartridges successfully without reloading.

A jury trial began on August 5, 2024. Officer Sherry Cone, a probation and parole specialist with the Department of Corrections, testified that she supervises people released from prison or placed on probation supervision. In that capacity, she came into contact with Defendant in December 2023 when he was on supervision for a felony offense that prohibited him from having a weapon. She testified that on December 7, 2023, she and other officers went to Defendant's residence, and, after several minutes, his stepmother answered the door. The officers told Defendant they were there to perform a drug screen. Defendant responded that he would be positive for marijuana, and they obtained a drug screen, which showed Defendant was positive for oxycodone and marijuana. The officers notified Defendant they would conduct a violation search. Ofc. Cone recalled that an officer remained in the living room with Defendant, his stepmother and his 16-year-old brother. Officers then entered Defendant's bedroom and found ammunition, high-capacity magazines and digital scales. Ofc. Cone noted that a digital scale is more consistent with drug distribution than drug use. Officers then walked into the laundry room located off the bedroom and, in a backpack on a shelf, found ammunition

2

and a brass catcher, i.e., a device that catches ejected shell casings. Inside the dryer, an officer found a bag containing digital scales, packaging and a vacuum-sealed bag with half a pound of suspected marijuana. Ofc. Cone noted that this amount of marijuana and the presence of sandwich bags were consistent with someone selling rather than using marijuana. She testified that officers then notified Defendant of his Miranda rights but allowed him to remain in the house during the search. She stated that in a kitchen cabinet, an officer located another high-capacity magazine and more heat-sealed bags with marijuana residue in them, which were consistent with someone who has purchased a large amount of marijuana to sell. Officers then approached Defendant's brother's bedroom, which was locked. Ofc. Cone testified that Defendant's stepmother stated that she did not know why the room would be locked, and Defendant "jumped up" and told officers they could not search that room. Defendant was disruptive and would not be seated when asked by officers, so Ofc. Cone decided that he should be taken to one of the officer's vehicles. She testified that Defendant's stepmother voluntarily unlocked the bedroom door, and officers observed marijuana and digital scales on a table. They then found three firearms in the closet, i.e., a standard Glock, a Glock with a switch that made it a fully automatic weapon and an AR-type pistol that was loaded with armor-piercing rounds. She noted that the magazines and ammunition found in Defendant's bedroom were consistent with the firearms located in his brother's bedroom. She stated that Defendant's stepmother told her that the firearms did not belong to her or her husband.

Officer Dave Kerr testified that on December 7, 2023, he went to Defendant's residence. He stated that he and another officer approached the

house and knocked on the door several times and that after three or four minutes, Defendant's stepmother answered the door. He explained to the stepmother that they were there to perform a drug screen on Defendant. He stated that the drug screen was positive, so they conducted a violation search. He searched Defendant's bedroom and the laundry room. In the laundry room he found a backpack on a shelf above the dryer, and the backpack contained different types of ammunition and a new brass catcher. He notified Ofc. Cone, and another officer handcuffed Defendant and read him his rights. The officers then continued their search and found a duffel bag inside the dryer, which contained suspected marijuana. Ofc. Kerr testified that when they turned their search to the kitchen and other bedrooms, Defendant was "adamant" that they could search his room only. He explained that when they asked Defendant's stepmother about the locked door and she offered to unlock it, Defendant became "pretty excited" about the fact that they could not go in that room. Ofc. Kerr testified that they had to restrain Defendant and then escorted him to his unit.

Officer Elizabeth Anderson testified that she participated in a residence check. She stated that other officers went to the door and that it took several minutes for anyone to answer the door. Because of Defendant's positive drug screen, the officers conducted a search of the residence. She noted several violations present in Defendant's bedroom, including weapons magazines and a set of digital scales. She stated that these items are consistent with a drug dealer rather than a drug user. Because of the paraphernalia located in the bedroom, officers expanded their search to the laundry room, where they found a large amount of marijuana and an AR magazine. She then went to open a door that was locked and stated that

4

Defendant "became very belligerent" that she could not go in that room. She stated that a woman commented that she did not know why the door was locked and then unlocked the door. Ofc. Anderson entered the bedroom and saw digital scales and suspected marijuana residue on a table. She then found weapons between a mattress and the closet. She stated that the weapons were a Glock 29 10mm, a Glock 17 9mm with a switch to make it fully automatic and an Anderson Arms AM 15 multi-caliber rifle. She noted that the weapons were found in one bedroom and that the ammunition and magazines were found in Defendant's bedroom and the laundry room. She noted that it would be a probation violation for Defendant to be around that amount of marijuana or to have the semi-automatic handguns found in the search. On cross-examination, she was unsure if the presence of magazines or bullets alone would violate the felon with a firearm statute, but she noted that the bullets do constitute a probation or parole violation.

Officer Samuel Hayes testified that he participated in the drug screen and search of Defendant's residence. He stated that he conducted Defendant's drug screen, that Defendant admitted prior to the screen that he was positive for marijuana and that he tested positive for THC and oxycodone. He stated that in the search of Defendant's bedroom, officers found digital scales and multiple magazines for different weapons. He opened a backpack found in the dryer in an adjacent laundry room and discovered suspected marijuana inside.

Officer Anne Winterton testified that she participated in the search of Defendant's residence, specifically in the kitchen. She found a magazine in a cabinet above the refrigerator and a vacuum-sealed bag on top of an armoire. She explained that vacuum-sealed bags are generally used to

5

package materials for distribution and that the magazine was for a semi-automatic handgun like a Glock.

Jaylon Wright, a forensic chemist at the North Louisiana Crime Lab, was accepted as an expert in forensic chemistry. He performed scientific analysis on the suspected marijuana and determined that it was marijuana, which is a Schedule I CDS. He stated that the total weight of the item was 248.4 grams and the tested weight was 227.9 grams, which is approximately half a pound.

Agent Kevin Harris of the Caddo Parish Sheriff's Office narcotics task force testified about his knowledge in the field of drug users and dealers. He noted that sandwich bags are commonly used with marijuana dealing and that firearms are used for protection purposes. He stated that, statutorily, 2.5 pounds is the amount at which someone is presumed to be a drug dealer rather than possessing it for personal use. He explained that the presence of half a pound of marijuana found with smaller amounts in packaging is consistent with the intent to distribute.

On August 6, 2024, the jury found Defendant guilty as charged on all eight counts.

On August 27, 2024, Defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal. In both motions he argued that the state failed to prove he possessed any of the firearms or marijuana and failed to establish the nexus between the firearms and marijuana found in the home.

A sentencing hearing was held on September 6, 2024. The trial court sentenced Defendant to 20 years at hard labor without benefit of probation, parole or suspension of sentence for each conviction of possession of a

firearm by a convicted felon. It noted that these sentences carry a minimum fine of $1,000 and converted these fines to 100 days in jail, to run concurrently. Regarding the conviction of possession with intent to distribute a Schedule I CDS, the trial court sentenced Defendant to seven years at hard labor. For each of the three convictions for illegal carrying of weapons while in possession of a CDS, the trial court sentenced Defendant to eight years at hard labor without benefit of probation, parole or suspension of sentence. Regarding the conviction of unlawful handling of a machine gun, the trial court sentenced Defendant to eight years at hard labor. The trial court ordered the eight sentences to run concurrently with each other and with the 100 days imposed in lieu of the fine. It noted that Defendant would receive credit for time served and recommended Defendant for any enrichment programs for which he is eligible.

Defendant appeals.

### DISCUSSION

In his sole assignment of error, Defendant argues that the State failed to prove beyond a reasonable doubt he was guilty of the crimes for which he was convicted. He contends that the state failed to prove that he possessed the firearms and CDS found during the search. He states that there was no evidence proving that he knew the contraband was present or that he exercised dominion and control over the areas the firearms and marijuana were found and notes that none of the contraband was found in any space exclusively or predominantly occupied by him.

The state argues that the evidence presented at trial supports the affirmation of all convictions. It notes that the ammunition and magazines recovered from Defendant's bedroom are consistent with use of the firearms

7

recovered from the locked bedroom. It contends that Defendant had access to the marijuana and firearms in the house, that the marijuana found in the backpack in the dryer was in close proximity to Defendant's bedroom and that Defendant's positive drug screen confirmed recent drug use. It also alleges that the hiding of the marijuana in the dryer, the locking of the bedroom door and Defendant's objection to entering the bedroom imply guilty knowledge of and dominion and control over the contraband.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

La. R.S. 14:95.1(A) defines possession of a firearm by a convicted felon and states, in pertinent part, that it is unlawful for any person who has been convicted of any violation of the Uniform Controlled Dangerous Substances Law, which is a felony, to possess a firearm. La. R.S. 14:95.1(C) adds that this statute shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole or suspension of sentence. To

8

convict a defendant of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20), 292 So. 3d 61. The state can prove possession of a firearm by a convicted felon by either actual or constructive possession. *State v. Grant*, 54,847 (La. App. 2 Cir. 12/14/22), 352 So. 3d 179. Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *State v. Hill*, 53,286 (La. App. 2 Cir. 3/4/20), 293 So. 3d 104. Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. *Id.* A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. *Id.* Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. *Id.*

La. R.S. 40:966(A)(1) defines possession with intent to distribute a Schedule I CDS and states that it shall be unlawful for any person knowingly or intentionally to possess with intent to produce, manufacture, distribute or dispense a CDS or controlled substance analogue classified in Schedule I. Pursuant to La. R.S. 40:964, marijuana is a Schedule I CDS. To convict a defendant of possession of a CDS with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it. *State v. Howard*, 49,965 (La. App. 2 Cir. 6/24/15), 169 So. 3d 777, *writ*

9

*granted*, 15-1404 (La. 12/16/16), 212 So. 3d 1168, and *aff'd,* 15-1404 (La. 5/3/17), 226 So. 3d 419. Intent to distribute a CDS is a specific intent crime. *Id*. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Intent to distribute a CDS may be established by proving circumstances surrounding the defendant's possession that give rise to reasonable inferences of his intent to distribute. *State v. Howard*, *supra*. The state need not prove the defendant actually possessed a CDS, as evidence of constructive possession is sufficient. *Id*. Constructive possession is established by evidence that the CDS was within the defendant's dominion and control and that he had knowledge of its presence. *Id*. Whether a defendant exercised dominion and control is based on factors such as his knowledge that a CDS was in the area; his relationship with other persons found in actual possession; his access to the area where a CDS was found; evidence of paraphernalia or of recent use of a CDS; and his physical proximity to a CDS. *Id*. Guilty knowledge is an essential element of possession and can be inferred from the circumstances. *Id*.

La. R.S. 14:95(E) defines illegal carrying of a weapon while in possession of a CDS as when the offender uses, possesses or has under his immediate control any firearm while unlawfully in the possession of a CDS. In order to convict a defendant of illegal carrying of a weapon while in possession of a CDS, the state must prove: (1) that the defendant possessed within his immediate control a firearm or other instrumentality customarily intended for use as a dangerous weapon, (2) while in possession of, during the sale of or during the distribution of a CDS. *State v. Carr*, 55,692 (La.

10

App. 2 Cir. 5/22/24), 387 So. 3d 886, *writ denied*, 24-00776 (La. 2/28/25), 402 So. 3d 486.  The term "possess" encompasses both actual and constructive possession.  *State v. Blanchard*, 99-3439 (La. 1/18/01), 776 So. 2d 1165.

La. R.S. 40:1752 defines unlawful handling of a machine gun and states in pertinent part that no person shall possess a machine gun within this state.  A "machine gun" means any weapon that shoots, is designed to shoot or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger.  La. R.S. 40:1751.  The term shall also include the frame or receiver of any such weapon, and any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun. *Id*.

Viewing the evidence in the light most favorable to the prosecution, the state proved beyond a reasonable doubt that Defendant was a felon in possession of three firearms.  Through Ofc. Cone's testimony and the introduction into evidence of the bill of information, minutes and guilty plea transcript of the previous felony, the state demonstrated that Defendant was convicted in 2023 of possession with intent to distribute a Schedule I CDS and that ten years had not elapsed when he committed the crimes in the instant case.  The state also proved Defendant's intent and constructive possession of the firearms.  Several officers testified that there was a significant delay between when officers knocked on the door of Defendant's house and when his stepmother answered the door, which, when considered with the location of the firearms, suggests he used this time to conceal the firearms.  These officers also testified that Defendant became "belligerent"

11

when they approached the locked bedroom and was "adamant" that they could not search that room, which demonstrates his knowledge of the presence of the firearms within that room. Although the firearms were not found in Defendant's bedroom, he had sufficient access, as well as dominion and control, over the areas of the house where they were found. Notably, the ammunition and magazines found in Defendant's bedroom were compatible with the firearms found in the locked bedroom, which further demonstrates his knowledge and constructive possession of the three firearms.

The state also proved beyond a reasonable doubt that Defendant possessed with intent to distribute a Schedule I CDS, i.e., marijuana. Through the testimony of a forensic chemist, the state confirmed that the suspected marijuana found at Defendant's house was in fact approximately half a pound of marijuana. Through the testimony of the officers who searched Defendant's house, the state proved that Defendant had constructive possession of the marijuana, even though it was not found in his bedroom. Officers discovered the marijuana in a bag inside the dryer in the laundry room, which is located off Defendant's bedroom and within his dominion and control. As discussed above, the minutes it took for someone to answer the door suggests Defendant used this time to conceal the marijuana in the dryer, which demonstrates his specific intent and knowledge of the presence of the marijuana. Defendant's admission of marijuana use and the drug screen confirming his use of marijuana also demonstrate his dominion and control over the marijuana. As noted in the testimony of several officers, the amount of marijuana found and the presence of digital scales, packaging and firearms were consistent with an intent to distribute.

As the state proved beyond a reasonable doubt that Defendant possessed three firearms and was in possession of marijuana, the state also proved beyond a reasonable doubt that Defendant illegally carried weapons while in possession of a CDS.

The state further proved beyond a reasonable doubt that Defendant unlawfully handled a machine gun. As discussed above, Defendant had constructive possession of the firearms found at his house, including the 9mm Glock. Ofc. Cone testified that the 9mm Glock was altered with a switch, which made it fully automatic, and is classified by the Bureau of Alcohol, Tobacco, Firearms and Explosives as a machine gun.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm Defendant Keith Adams's convictions and sentences.

**AFFIRMED.**